## CHARLES M. WELCH v. THE TRIBUNE PUBLISHING COMPANY.

*Libel and slander—Evidence—Malice—Jury—Untrue verdict— Attaint.*

1. To charge that a jury have perjured themselves in rendering a certain verdict is libelous.

2. In a libel suit brought by a juror against the proprietor of a newspaper for charging that the jury in a certain case, of which the plaintiff was a member, perjured themselves in rendering their verdict, the plaintiff cannot be questioned concerning the verdict, or his motives or reasons for finding the same; such mode of questioning falling within the prohibition of How. Stat. § 7608, abolishing the common-law remedy of attaint upon untrue verdicts.

3. The trial judge cannot upon his own motion reject a qualified juror with whom the parties are satisfied, unless for sufficient cause, which should appear upon the record.

4. On the trial of a libel suit brought by a juror against a newspaper proprietor for charging that a jury of which plaintiff was a member perjured themselves in rendering their verdict, and in which the defendant gave notice of justification, the plaintiff was asked on his direct examination if any influence

other than that of the evidence and instructions of the court.
and arguments of counsel was brought to bear upon him in
the consideration and finding of his verdict, which question is
held to call for immaterial testimony, no such fact being in
issue.

5. Plaintiff's counsel offered in evidence a paper signed by the
plaintiff and the other members of the jury, requesting the
defendant to retract the alleged libelous charge, which was
admitted, but its reading to the jury made subject to proof
that it reached the defendant, which ruling is sustained.

6. The plaintiff was allowed to be asked on cross-examination if
there were not publications in all of the newspapers in the city
where the verdict was rendered in which it was severely criti-
cised, which is held not to have been an abuse of the discre-
tion of the trial court, the alleged libelous article having char-
acterized the verdict as extraordinary, and the testimony tend-
ing to show that it was so regarded by the public.

7. Evidence of the publication by a defendant in a libel suit, after
its commencement, of an article in which the alleged libelous
article was republished, with comments thereon, is admissible
as showing malice on the part of the defendant.

Error to Wayne. (Brevoort, J.) Argued October 9,
1890. Decided December 24, 1890.

Case. Plaintiff brings error. Reversed. The facts are
stated in the opinion.

*W. H. H. Russell,* for appellant, contended:

1. What appeared in other papers had nothing to do with the
responsibility of defendant for the publication of articles com-
plained of in this case, and the objections of plaintiff's counsel
to the questions asked of plaintiff on cross-examination touch-
ing such publication in other papers should have been sustained;
citing *Maclean v. Scripps,* 52 Mich. 214.

2. A newspaper article which pronounces the verdict of a jury to
be *infamous* is libelous *per se;* citing *Byers v. Martin,* 2 Colo.
605 (25 Am. Rep. 755); *In re Cheeseman,* 49 N. J. Law, 115
(60 Am. Rep. 596).

3. Under How. Stat. § 7608, the author and publisher of any
article which has a tendency to degrade the judicial tribunals,
destroy that public confidence and respect for their judgments,
proceedings, and decrees so essential to the good order and

well-being of society, and thus most effectually obstruct the free course of justice, may be punished for contempt; citing *In re Moore*, 63 N. C. 397; *State v. Morrill*, 16 Ark. 384; *Watson v. Williams*, 36 Miss. 341; and if courts have this power, surely a juror, as a part of the court, should have redress for libelous assaults on his character as such; citing *Ex parte Robinson*, 19 Wall. 505.

*John Atkinson,* for defendant, contended:

1. It is only when excusing the juror affects in some way the right of challenge that any objection can be made. In this case not a single challenge was presented, and an unexceptional jury was obtained, and the discretionary power of the circuit judge was in no way abused; citing *Pannell v. State*, 29 Ga. 681; *State v. Ostrander*, 18 Iowa, 435; *State v. Whitman*, 14 Rich. Law, 113; *Hines v. State*, 8 Humph. 597.

CHAMPLIN, C. J. The plaintiff brought an action of trespass on the case against defendant for libel.

In June, 1889, the plaintiff was summoned to appear in the recorder's court of the city of Detroit, as a talesman to serve as a juror in the trial of Nelson Brule, then about to be tried upon an information charging him with assaulting, with intent to kill and murder, Ida Corneau. He was examined as to his qualifications, and admitted and sworn as a juror in the cause. After hearing the testimony, the arguments of counsel, and the charge of the court, the jury retired to consider the case, and, after being absent a short time, they returned into court, and reported that they found Brule was not guilty.

The next day the Detroit Tribune, published by the defendant, contained an editorial, reciting the circumstances of the alleged attempted killing, and animadverting severely upon the jury for having returned such a verdict, which it characterized as outrageous. The libelous words charged in the declaration read as follows:

"Every little while the popular faith in our boasted system of trial by jury gets a tremendous wrench by the rendition of a specially outrageous and idiotic verdict on

the part of twelve prize jackasses who get into the jury-box. Such an event happened in Detroit yesterday."

The article then went on to state as follows:

"Some time ago one Nelson Brule, a young married man with a family, concealing that fact, proceeded to 'make love' to a young lady of good family and character, and so far enlisted her affections as to secure her tacit consent to a proposal of marriage. While she was delaying, in order to become assured that her suitor's parents would take kindly to her,—a very natural hesitation on a prudent young lady's part,—she learned the true condition of Brule's domestic affairs, and then refused to have anything further to do with him. A few days after she had made this announcement to him, he called on her again, saying that he was going home, and asking her to see him off on the train, and bid him good-by. This impudent proposition she declined, but weakly consented to walk down the street with him. While doing this he suddenly seized her around the neck, placed a pistol to her head, and fired. She screamed, staggered, and fell, and, supposing he had accomplished his murderous intent, he put another ball into his own head,—unfortunately where it didn't do the most good. Both persons recovered, and the would-be murderer has been on trial in the recorder's court for the last three days on a charge of assault with intent to murder; the following citizens of Detroit composing the jury: Thomas Hurst, M. P. Christian, Henry M. Bailey, H. A. Marks, Thomas Griffin, Joseph Atkinson, James Keligher, Charles M. Welch, G. B. Noble, Charles F. Ferris, Morgan Lacey, Samuel Furguson.

"We have narrated in brief the plain facts of the case, about which there is not the slightest controversy. The defense set up was emotional insanity. Here was a man attempting for months to persuade a young girl to marry him, which, had he succeeded, would have involved the crime of bigamy on his part. If that was not his real intention, only one other object is supposable in his case, —that of the crime of his victim's seduction. Either purpose brands him a deliberate villain. There was nothing emotional about this intelligent hunting of an innocent girl. But, when foiled in his dastardly and devilish efforts, he seeks to murder the object of his long pursuit, 12 men are found to acquit him on the ground that he

was insane just at the moment of committing the act. By this verdict he is turned loose in the community to repeat his venture, if he chooses, if he can go where his identity and history will not be known.

"No wonder that a general outburst of indignation has followed the rendition of such an outrageous verdict. Every young woman's life in Detroit is rendered less secure by the result of this trial. Every villain is encouraged to believe his chances of escape bettered if he plots against the happiness, the virtue, and the life of an innocent girl. If there seems to be anything out of the way in these few feeble remarks, charge it up to emotional insanity."

A few days after, another article appeared in the paper under the heading, "This is Encouraging," and, commenting on and commending a coroner's jury, who found that the deceased "came to his death through an assault made upon his person by John Cook," added:

"The infamous Brule jury, and the scarcely less censurable coroner's jury in the Crawford case, are quite enough of that kind of verdict-makers. An outraged and indignant public wants no more of that sort. The toughs and crooks of Detroit have hitherto had altogether too much liberty, and too many friends in court."

Later another article appeared, which purported to report the proceedings of a religious meeting at the Casino Tabernacle, in which a speaker said:

"You are all under sentence of death. There is no jury which is going to perjure themselves and let you off, as one did in this city a few weeks ago."

These articles were all counted upon as libelous in plaintiff's declaration. The defendant pleaded the general issue, and gave notice that it would insist upon the truth of the articles published as a defense to the action. The trial resulted in a verdict for defendant.

The first assignment of error relates to the action of the court in excusing the juror Joseph G. Campau, who was called and examined by counsel of both parties, who

announced themselves as satisfied with him as a juror. The court, without a challenge being interposed, and without stating any cause or reason therefor, excused the juror, against the protest of the plaintiff. We do not think the judge has a right to reject a qualified juror with whom the parties are satisfied, unless for sufficient cause; and such cause should appear upon the record. *Pearse v. Rogers*, 2 Fost. & F. 137. The circuit judge is not invested with any right of peremptory challenge. He can excuse for cause, but the cause must be stated, so that it may appear of record. Proff. Jury, §. 140. The exercise of the power to discharge a juror by the circuit judge of his own volition is not a matter of discretion. It must be based upon some cause. It will not do to hold that a circuit judge may, without assigning any reason, discharge jurors at his mere will or caprice. If he may so discharge one juror he may discharge a dozen, and compel parties, after they have exhausted their peremptory challenges, to accept such a jury as he is satisfied with. Counsel for defendant contends that the record does not show that plaintiff was prejudiced, and that the presumption is in favor of judicial action. The record does disclose that the juror was one of the regular panel, and it further discloses that talesmen were resorted to in order to fill the panel which tried the cause. The law has provided measures for the selection and return of jurors to serve in the trial of causes, and a party has a right, if there be no legal objection to the jurors so returned, to have his cause tried by jurors so selected, unless rejected in a manner provided by law.

Upon the trial of the cause, the plaintiff took the witness stand, and testified in his own behalf. He stated that he heard all the evidence in the case, the arguments of counsel, and the instructions of the court, after which the jury retired to the jury-room to consider the evidence,

and agree upon a verdict; that they were out something over an hour, and returned into court with a verdict of "not guilty." He was then asked by his counsel:

"Was there any other influence than that of the evidence and the instruction of the court and the arguments of counsel brought to bear upon you as a juror, in the consideration and conclusion of your verdict?"

This was objected to as immaterial, and excluded. Error is assigned upon the ruling. The ruling was correct. No such fact was in issue.

A request in writing, signed by all the jurors, asking the Tribune to make a retraction, was then shown to the witness, and he testified that he signed it, and requested it to be presented to the Tribune people for retraction of the article. Counsel for defendant objected to it being received in evidence. The court decided to admit it, but that it should not be read unless it was shown to have reached the defendant. This ruling is excepted to, and alleged as error. Plainly it was not error. Moreover, the parties had stipulated in writing the fact that a request in writing was made upon the defendant to retract the alleged libelous articles, and that no retraction had been made. No attempt was made to identify this as the request which was presented.

Witness was permitted to be asked, against plaintiff's objection, if there were publications in all of the newspapers in Detroit in regard to the verdict rendered in the Brule case, and that if in all of them the action of the jury was severely criticised; and error is assigned upon the rulings. We think the latitude permitted upon the cross-examination by the court was not an abuse of discretion. The verdict was characterized as extraordinary, and the testimony tended to show that the public regarded it as such.

He was asked upon cross-examination the following question:

"Mr. Welch, you say that, after hearing the evidence and the charge of the court in that case, the jury retired to consider their verdict. Now, was the verdict that was rendered in that case the verdict you agreed upon in your jury-room?"

The question was objected to by counsel for plaintiff as incompetent and immaterial, and—

"Because the stipulation shows what the verdict was, and because section 7608, How. Stat., especially provides that 'no juror shall be questioned for any verdict rendered by him, nor shall he be subject to any action, civil or criminal, on account of such verdict, except by indictment for corrupt conduct in rendering such verdict in cases prescribed by law.' And further because no such matter is alleged in the defendant's plea of justification."

The objection was overruled, and the witness answered, "Yes, sir." He was further interrogated, and was permitted to testify, against the same objection, that he rendered the verdict because he thought it was right, under the evidence produced there, and the charge of the court; that he acquitted Brule on the ground of insanity, and in regard to shooting himself; that he did not think Brule shot at her at all; that he fired a pistol close to her head, according to the evidence. These rulings are assigned as error, and the counsel for the plaintiff contends that all such testimony elicited by interrogatories to this witness, who was a juror, is incompetent and privileged by the statute above quoted. The authorities cited by counsel in support of his position all relate to the incompetency of the oaths of jurors as to what took place in the jury-room while considering their verdict, tending to impeach the same. Such authorities are

not based upon the section cited.[1]   This provision of the
statute grew out of the abolition of the common-law
remedy of attaint, and the supplanting of that harsh
procedure by the granting of new trials in civil cases;
and to understand what is meant by the expression, "no
juror shall be questioned for any verdict rendered by
him," it is proper to refer briefly to the proceeding
by attaint, which was abolished when this statute was
enacted.

In the early method of trial by jury in England, from
whose growth our present system has developed, the jury
were composed of witnesses to the transaction submitted
to them, and could rarely give a wrong verdict without
at the same time committing perjury.   New trials before
another jury to correct a wrong verdict had not yet
become the practice of the courts, and the only way of
correcting such evils was by attaint.   The party who
alleged a wrong verdict was entitled to the process of
attaint, by which he obtained a writ summoning the 12
jurors who rendered the verdict, and 24 other jurors,
called the "grand jury," who should consider the mat-
ters submitted to the first 12 or petit jury.   The record
and proceedings of the former trial were read to them;
the trial judge explained the matters in dispute upon
which it was alleged a wrong verdict had been rendered,
and the individual jurors who had joined in the verdict
were questioned concerning the grounds of their decision;
and, if the grand jury found a different verdict than the
former jury, they were attained, and were immediately
arrested and imprisoned, their lands and chattels were
forfeited to the king, and they became unworthy of
credit, and incompetent to give testimony or to sit upon

_Pierce v. Pierce,_ 38 Mich. 416; _People v. Knapp,_ 42 Id. 271;
_Hewett v. Chapman,_ 49 Id. 4; _Churchill v. Circuit Judge,_ 56 Id.
538.

a jury; their wives and children should be turned out of their houses, which were to be demolished, and their trees and meadows destroyed; and this continued to be the punishment until 23 Hen. VIII, c. 3, which substituted pecuniary penalties upon the jurors. It is said in Bac. Abr. tit. "Juries" (M), that attaint "is only disused, and not taken away." It was, however, abolished in England by Statute 6 Geo. IV. c. 50 (1825). It will be seen that it came to us as a part of the common law, but was abolished by the Revised Statutes of 1838 in the following language:

"Attaints upon untrue verdicts are abolished, and, for any verdict rendered by him, no juror shall be questioned, or be subject to any action or proceeding, civil or criminal, except to indictment for corrupt conduct in rendering such verdict, in the cases prescribed by law." Rev. Stat. 1838, pt. 3, tit. 1, c. 5, § 34.

This was followed by the Revision of 1846, which reads the same as How. Stat. § 7608. Viewed in the light of the common law and the remedy interposed by statute, it is quite plain what the meaning and construction of the statute is. Attaints for untrue verdicts are abolished. It then proceeds to forbid what had before been the practice at common law,—the questioning of any juror for any verdict rendered by him. The questioning referred to was part of the proceeding against the juror for a false verdict. The whole section is a prohibition against any prosecution of a juror for a false verdict at the suit of a party, or by the people, except for corrupt conduct in rendering the verdict. The object of the statute is to place jurors beyond the reach of a powerful or malicious adversary, and protect them in the honest and fair discharge of their duty without fear or favor.

It would be small protection if any defeated party in a lawsuit could, through the public press, or otherwise, libel and traduce a juror, and say to him:

"You must submit to the ruination of your character, or, if you seek legal redress, twelve other men will sit in judgment upon your motives and conduct in rendering the verdict you did."

What was done in this case was to question the juror for the verdict rendered by him as an untrue verdict, and he was called upon to give the reasons and grounds of it; and the correctness of the verdict, and the sufficiency of the testimony to produce conviction in the mind of Welch and his fellow-jurors, was again tried before another jury as fully, to all intents and purposes, as if the proceedings by attaint had not been abolished. It can make no difference that the alleged libel is justified by plea. Justification is a good defense, but it must be proved by legal and competent evidence. The shield which the statute throws around jurors from being questioned and from suit for any verdict rendered by them cannot be broken or thrown aside for the purpose of trying the truth of the verdict rendered. The statute seeks to protect the rights of the public and of parties by proceeding against a juror who has been guilty of corrupt conduct in rendering a verdict by criminal prosecution.

The conduct of jurors is not above criticism either by the public press or private parties. No political, judicial, or administrative department of the government is beyond criticism. But just criticism is not libelous, neither is severe criticism. But to charge that a jury have perjured themselves in rendering a certain verdict is libelous. It may appear in a criminal case, to a person not acting under the responsibility of an oath, from the facts and circumstances developed at the trial, that the accused is guilty, and ought to be convicted. Yet to the juror sitting upon the trial, every fact and circumstance must be consistent not only with the guilt of the accused of the crime charged, but the evidence must be of such

character and weight as to leave no reasonable doubt of his guilt in the mind of the jury. How are such questions to be tried in a libel suit charging perjury under a plea of justification and truth of the charge? What nicely poised scales do the second jury possess which shall enable them to enter the domain of conscientious conviction or reasonable doubt in the minds of the first jury, and weigh them to ascertain whether they have violated their oaths?

What has been said has application solely to the question under consideration; that is, to the right of defendant in a case like this to question a juror concerning a verdict rendered by him, or to inquire of him his motives or reasons for finding such verdict. This is sufficient for the present case. We think the question, and those succeeding it in the same direction, should have been excluded.

We think the court erred in excluding an article appearing in defendant's paper, after suit was commenced, in which the article charged as libelous was republished and comments made. It was offered to show that the defendant entertained malice against plaintiff, and was admissible for that purpose.

For the errors pointed out, the case must be reversed, and a new trial granted.

The other Justices concurred.