LINS v EVENING NEWS ASSOCIATION

Docket No. 59113. Submitted February 2, 1983, at Detroit.—Decided
    October 10, 1983.

Robert A. Lins and Otto E. Wendel, president and secretary-
    treasurer, respectively, of Teamsters Local 299, brought an
    action in the Wayne Circuit Court against the Evening News
    Association, which publishes The Detroit News, and others for
    defamation. The article giving rise to the action concerned a
    dispute within the Teamsters local regarding the efforts of
    dissident members to amend the bylaws. The court, Harry J.
    Dingeman, Jr., J., granted summary judgment for defendants.
    Plaintiffs appealed. *Held:*

    1. The issues of whether a publication (1) is defamatory, (2) is
    "of and concerning" the plaintiffs, and (3) contains constitution-
    ally protected opinion are issues properly tested in a libel
    action by a motion for summary judgment for failure to state a
    claim for which relief can be granted.

    2. The article was defamatory.

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 50 Am Jur 2d, Libel and Slander §§ 143 *et seq.,* 238, 239, 407.

[1] 61A Am Jur, Pleading §§ 71 *et seq.,* 230 *et seq.*

Relevancy of matter contained in pleadings as affecting privilege
    within law of libel. 38 ALR3d 272.

Sufficiency of identification of plaintiff by matter complained of as
    defamatory. 100 ALR2d 227.

[2, 3] 61A Am Jur 2d, Pleading § 230 *et seq.*

[3, 5] 50 Am Jur 2d, Libel and Slander § 125.

Constitutional aspects of libel or slander—Supreme Court cases. 28
    L Ed 2d 885.

Constitutional aspects of libel or slander of public officials. 95
    ALR2d 1450.

[4] 50 Am Jur 2d, Libel and Slander § 146.

[5-7] 50 Am Jur 2d, Libel and Slander §§ 301, 352 *et seq.*

What constitutes actual malice, within federal constitutional rule
    requiring public officials and public figures to show actual malice.
    20 ALR3d 988.

[6] 50 Am Jur 2d, Libel and Slander § 302.

Who is a public official or otherwise within the federal constitu-
    tional rule requiring public officials to show actual malice. 19
    ALR3d 1361.

3. The statements were of and concerning the plaintiffs. One statement identified Otto Wendel specifically. Other statements referred to the local's leadership, a small group of men whose identities were readily ascertainable from the content of the article.

4. The statements are entitled to a constitutional qualified privilege. A private person may become a limited public figure for purposes of applying the constitutional qualified privilege to defamatory statements made about them where there is a particular public controversy into which the person injects himself. The controversy was public and plaintiffs had injected themselves into it by being officers of the Teamsters local.

5. Plaintiffs did not show publication with actual malice, that is, with knowledge of falsity or reckless disregard for truth. Failure to undertake prior investigation does not constitute proof sufficient to present a jury question of reckless disregard for the truth of the statement, nor does failure to verify statements from biased sources.

Affirmed.

1. LIBEL AND SLANDER — SUMMARY JUDGMENT.

The issues of whether a publication (1) is defamatory, (2) is "of and concerning" the plaintiffs, and (3) contains constitutionally protected opinion are issues properly tested in a libel action by a motion for summary judgment for failure to state a claim for which relief can be granted (GCR 1963, 117.2[1]).

2. MOTIONS AND ORDERS — SUMMARY JUDGMENT — FAILURE TO STATE CLAIM — COURT RULES.

A motion for summary judgment for failure to state a claim for which relief can be granted is tested by the pleadings alone and tests the legal basis of the complaint, not whether it can be factually supported; the factual allegations of the complaint are taken as true, along with any inferences or conclusions which may be fairly drawn from the facts alleged and, unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion should be denied (GCR 1963, 117.2[1]).

3. LIBEL AND SLANDER — PUBLIC FIGURES — SUMMARY JUDGMENT.

In deciding motions for summary judgment in actions for libel by public figures, the benefit of any doubt should go to the defendant under First Amendment rights of free speech and free press.

4. LIBEL AND SLANDER — CLASS SLANDER.

   No individual of a defamed class may maintain an action for the publication which is without any special personal application except where the group is small and the identity of the individuals is readily ascertainable from the content of the publication.

5. LIBEL AND SLANDER — PUBLIC FIGURES — QUALIFIED PRIVILEGE — MALICE.

   A public figure may not recover damages for a defamatory falsehood that relates to his official conduct absent clear and convincing proof that the statement was published with actual malice, that is, with knowledge that it is false or with reckless disregard of whether it is false or not; failure to undertake prior investigation does not constitute proof sufficient to present a jury question of reckless disregard for the truth of the statement, nor does failure to verify statements from biased sources.

6. LIBEL AND SLANDER — QUALIFIED PRIVILEGE — LIMITED PUBLIC FIGURES.

   A private person may become a limited public figure for purposes of applying the constitutional qualified privilege to defamatory statements made about him where there is a particular public controversy into which the person injects himself.

7. LIBEL AND SLANDER — QUALIFIED PRIVILEGE — COMMON LAW.

   The Michigan common-law privilege requires proof of actual malice for a plaintiff to recover damages for defamatory statements subject to the privilege.

*Lippitt, Harrison, Perlove, Friedman, Zack & Whitefield* (by *Norman L. Lippitt), for plaintiffs.*

*Butzel, Long, Gust, Klein & Van Zile, P.C.* (by *Richard E. Bassel* and *James E. Stewart), for defendants.*

Before: D. F. WALSH, P.J., and BEASLEY and T. R. THOMAS,* JJ.

BEASLEY, J. Plaintiffs, Robert A. Lins and Otto E. Wendel, president and secretary-treasurer, re-

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

spectively, of Teamsters Local 299, brought suit against defendants, Evening News Association, publisher of The Detroit News, and Fred Girard, et al., for damages for libel. After lengthy discovery, the trial court granted summary judgment in favor of defendants under GCR 1963, 117.2, subds (1), (3). Plaintiffs appeal as a matter of right.

Plaintiffs' claims arise from a newspaper column appearing in the March 6, 1977, Sunday edition of The Detroit News. The column was written by defendant Fred Girard, a newspaperman employed by The Detroit News, and attacks the leadership of Teamsters Local 299. When plaintiffs' prompt demand for retraction was unanswered, plaintiffs started this suit for damages for libel.

Defendants filed a motion for summary judgment under GCR 1963, 117.2(3), but the trial court chose to treat the motion as being under both 117.2(1) and 117.2(3), asserting that part of the legal theory relied upon by defendants involved questions of law more properly raised under GCR 1963, 117.2(1).

In his column, defendant Girard, more pamphleteer than professional reporter, writes of "thieves who run the Teamster Union", "thugs who run Local 299", "stupid men" who make "stupid moves", "crooked officials", "animals", and "Union hoods". By reference, he speaks of "arrogant criminality", "kangaroo court[s]" and "arrogant abuses".

In granting summary judgment, the trial judge filed a lengthy and thorough 36-page opinion dealing with the issues in detail. While not joining in all of his analyses and application of the libel laws to this case, we affirm the grant of summary judgment.

We agree with the trial court that issues regard-

ing whether the column (1) is defamatory, (2) is "of and concerning" plaintiffs, and (3) contains constitutionally protected opinion are "specialized arguments that plaintiff has failed to state a legally actionable claim". These are properly GCR 1963, 117.2(1) issues measured by the standard articulated in *Partrich v Muscat:*[1]

"The standard governing this Court's review of a grant or denial of a motion for summary judgment based on GCR 1963, 117.2(1) is well settled. The motion is to be tested by the pleadings alone. * * * The motion tests the legal basis of the complaint, not whether it can be factually supported. * * * The factual allegations of the complaint are taken as true, along with any inferences or conclusions which may fairly be drawn from the facts alleged. Unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion under this subrule should be denied."

The other two grounds asserted by defendants in support of their motion for summary judgment constitute attacks on the factual basis of plaintiffs' claim and are properly considered under GCR 1963, 117.2(3).

The trial judge cited *Peisner v Detroit Free Press, Inc,*[2] quoting as follows:

"In reviewing a 117.2(3) summary judgment motion, the following principles apply:

" 'Motions for summary judgment under GCR 1963, 117.2(3) are not proper unless no genuine issue as to any material fact remains. In passing on the motion, benefit of every reasonable doubt must be given to the party opposing the motion. Summary judgment under this provision is designed to test whether factual sup-

[1] 84 Mich App 724, 729-730; 270 NW2d 506 (1978).

[2] 82 Mich App 153, 164-165; 266 NW2d 693 (1978).

port exists for the claim made. Affidavits, pleadings, depositions, admissions, and other documentary evidence must be considered by the court. Courts are liberal in finding that a genuine issue does exist, in order not to infringe upon a party's right to trial of disputed factual issues. * * *

" 'On the other hand, we note that a party opposing the motion for summary judgment based on subrule 117.2(3) must come forward with some proof to establish the existence of a genuine issue of material fact. * * *'

"A 117.2(3) summary judgment motion tests the evidentiary sufficiency of the opposing party's case. Therefore, while the opposing party is to be given the benefit of any reasonable doubt as to the existence of an issue of fact, his allegations of the existence of an issue of fact are not sufficient. The opposing party must provide facts supporting his allegations. Factual support may be supplied by affidavits, pleadings, depositions and other documentary evidence."

We do not fully share the thrust of *Peisner,* particularly the emphasis on giving the advantage of every doubt to the plaintiff who claims he is libeled by the media. We are well aware that the *Peisner* Court was speaking in the context of a summary judgment motion.[3] But, we believe the *Peisner* Court missed the thrust of the federal cases, starting with *New York Times v Sullivan.*[4]

The constitutional underpinning of *New York Times v Sullivan* and its progeny are the First Amendment[5] constitutional guarantees of freedom of speech and freedom of the press as applied to the states by the Fourteenth Amendment. They cut squarely across state libel laws. The state libel laws enjoy no "talismanic immunity" from consti-

---

[3] Also, we recognize that in *Peisner, supra,* the Court concluded that plaintiff was not a public figure.

[4] 376 US 254; 84 S Ct 710; 11 L Ed 2d 686 (1964).

[5] US Const, Am I.

tutional limitations.[6] Freedom of expression upon public questions is secured by the First Amendment.

In *New York Times v Sullivan, supra,* Justice Brennan goes on to expand his First Amendment thesis, saying:

"Thus we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. * * *

"Authoritative interpretations of the First Amendment guarantees have consistently refused to recognize an exception for any test of truth—whether administered by judges, juries, or administrative officials—and especially not one that puts the burden of proving truth on the speaker."[7]

A typical application of these principles is the following passage from *Meeropol v Nizer:*[8]

"Summary judgment is particularly appropriate at an early stage in cases where claims of libel or invasion of privacy are made against publications dealing with matters of public interest and concern. In recognition of the constitutional privilege of free expression secured by the First and Fourteenth Amendments, the courts in libel actions have recognized the need for affording summary relief to defendants in order to avoid the 'chilling effect' on freedom of speech and press."

We believe that, on summary judgment motions

---

[6] *New York Times v Sullivan, supra,* p 269.

[7] 376 US 270-271.

[8] 381 F Supp 29, 32 (SD NY, 1974), *aff'd in relevant part* 560 F2d 1061 (CA 2, 1977), *cert den* 434 US 1013; 98 S Ct 727; 54 L Ed 2d 756 (1978), cited with approval in *Cianci v New Times Publishing Co,* 486 F Supp 368, 371 (1979).

involving alleged libel of public officials or public figures by the media, if any benefit of the doubt is to be given, it must go to the media under First Amendment constitutional rights of free speech and free press.

The federal cases make it clear that the chilling ᷾ffects on the exercise of First Amendment rights of encouraging full scale state libel trials by public officials or "limited" public figures will not be permitted. While this factor is not decisive, it must be kept firmly in mind in assessing matters such as burden of proof.

In his opinion, the trial judge concluded that as a matter of law, taking the column as a whole, a legally actionable claim was asserted because it was susceptible of an interpretation which would harm the reputation of plaintiffs. Thus, he rejected defendants' claim that the article was not defamatory. We agree with the trial court.[9]

Second, the trial court considered whether the statements contained in the column had such personal application to plaintiffs as to be "of and concerning" plaintiffs. Unless they are, plaintiffs are not libeled. The trial judge believed that this was also an issue of law more properly brought under GCR 1963, 117.2(1). He pointed out that the only specific reference in the column was to secretary-treasurer Otto Wendel, asserting that he rose with the union bylaws in his hand and mumbled "I dunno how tuh read dese" and sat down. Otherwise, he felt that the statements referred to groups of people rather than specific individuals.

Plaintiffs claim that Girard's column is "of and concerning" them. Defendants distinguish between comments concerning the Teamsters Union in gen-

---

[9] *Nuyen v Slater,* 372 Mich 654, 662; 127 NW2d 369 (1964); *Iacco v Bohannon,* 70 Mich App 463; 245 NW2d 791 (1976), *lv den* 399 Mich 846 (1977); 3 Restatement Torts, § 559, p 140.

eral and those about Local 299, claiming that the former are not sufficiently of and concerning plaintiffs to be actionable. The general rule regarding this subject is well established in Michigan, providing:

"Where a defamatory publication affects a class of persons without any special personal application, no individual of that class can maintain an action for the publication; and it has been held that, where defamatory statements are made against an aggregate body of persons, an individual member not specifically imputed or designated cannot maintain an action."[10]

In *Chapman v Romney*,[11] we also said:

"Under Michigan law, it is not enough for the complainant merely to plead that he is a member of a group allegedly defamed".

However, as is indicated by the trial court, there is an exception to this general rule, where a small group is defamed and plaintiff's identity is readily ascertainable from the content of the publication.

53 CJS, Libel and Slander, § 11, p 55, states:

"However, a class may be defamed, so as to authorize any member of the class to sue, where the defamatory matter is applicable to every member of the class, particularly where the statement is directed toward a comparatively small group of persons or a restricted portion of a general class; and if the charge is against a class, and is, or may be, made of definite application, any one of that class may maintain an action on

---

[10] 53 CJS, Libel and Slander, § 11, p 55, *cited with approval in Chapman v Romney*, 6 Mich App 36, 39; 148 NW2d 230 (1967). Also see *Watson v Detroit Journal Co*, 143 Mich 430; 107 NW 81; 5 LRA NS 480; 8 Ann Cas 131 (1906).

[11] *Chapman, supra*, p 40.

showing that the words applied especially to him."
(Footnotes omitted.)[12]

In this connection, the trial court concluded as
follows:

"In the instant case, the statements generally per-
taining to the leadership of the Teamsters Union are
not actionable under the group libel rules because they
refer to a large group without designating plaintiffs.
Statements which refer to the local's leadership, how-
ever, are sufficiently 'of and concerning' plaintiffs to
present a legally actionable claim for purposes of GCR
1963, 117.2(1). In addition to specifically identifying
Otto Wendel in a leadership capacity at the local, the
reference to the local's leadership refers to a small
group (seven men) whose identities are readily ascer-
tainable from the content of the article."

We agree with this portion of the trial judge's
analysis and with his conclusions regarding the
same.

Third, defendants claim that the statements in
defendant Girard's column are constitutionally
protected as statements of opinion. Citing *Gertz v
Robert Welch, Inc,*[13] and other federal cases, the
trial judge held that the majority of defendant's
statements are constitutionally protected opinion.

However, the trial judge specifically held that
four of the statements contained in the column
were not constitutionally protected as statements
of opinion and were legally actionable because
they were "either factual in nature" or so bur-
dened with factual content imputing specific
wrongful conduct that the constitutional protec-

[12] Also, see *Ball v White,* 3 Mich App 579; 143 NW2d 188 (1966),
*Welch v Tribune Publishing Co,* 83 Mich 661; 47 NW 562 (1890), and
*Boehmer v Detroit Free Press Co,* 94 Mich 7; 53 NW 822 (1892).

[13] 418 US 323; 94 S Ct 2997; 41 L Ed 2d 789 (1974).

tion did not extend to them. These four statements are: (1) that those who run Local 299 were trying to run Camarata (the leader of the dissidents) out of the union by rigging it for a shop steward to file charges against him for showing up at the picket line of an unauthorized strike; (2) that dissident union members causing the strike were fired at the insistence of union hoods; (3) that Camarata missed no work of his own and broke no law or Teamsters rule by attending the strike; and (4) that Wendel refused to read bylaws at a duly held union meeting.

While we do not necessarily subscribe to all of the trial court's references to the meanings and the effects of the cited federal cases, we are generally in accord with the trial court's conclusions that the majority of Girard's column constitutes constitutionally protected opinion. We are then left with whether the four so-called factual statements defeat defendants' motion for summary judgment.

Fourth, the trial court stated that an issue was whether defendant Girard's column was protected by the constitutional qualified privilege afforded to publications concerning public figures. The trial court cited *New York Times, supra,* for the proposition that prohibits a public official from recovering damages for a defamatory falsehood that relates to his official conduct absent clear and convincing proof that the statement was published with actual malice, that is, with knowledge that it is false or with reckless disregard of whether it is false or not.

In *Cantrell v Forest City Publishing Co,*[14] Justice White, speaking of the definition of "actual malice" established in *New York Times v Sullivan,*

[14] 419 US 245, 251-252; 95 S Ct 465; 42 L Ed 2d 419 (1974).

namely, "with knowledge that a defamatory statement was false or with reckless disregard of whether it was false or not", says:

"As so defined, of course, 'actual malice' is a term of art, created to provide a convenient shorthand expression for the standard of liability that must be established before a State may constitutionally permit public officials to recover for libel in actions brought against publishers. As such, it is quite different from the common-law standard of 'malice' generally required under state tort law to support an award of punitive damages. In a false-light case, common-law malice—frequently expressed in terms of either personal ill will toward the plaintiff or reckless or wanton disregard of the plaintiff's rights—would focus on the defendant's attitude toward the plaintiff's privacy, not toward the truth or falsity of the material published." (Footnote omitted.)

A little earlier, in *Rosenbloom v Metromedia, Inc,*[15] Justice Brennan, referring to the series of cases starting with *New York Times v Sullivan, supra,* spoke of the limitations upon state libel laws imposed by the federal constitutional guarantees of freedom of speech and of the press. He pointed out that, in a civil libel action by a public official against a newspaper, those guarantees require clear and convincing proof that a defamatory falsehood was uttered with "knowledge that it was false or with reckless disregard of whether it was false or not".

In the within case, the trial judge pointed out in his opinion that this constitutional qualified-privilege protection was extended to publications concerning public figures, citing *Curtis Publishing Co v Butts,*[16] and *Gertz v Robert Welch, Inc, supra.*

[15] 403 US 29; 91 S Ct 1811; 29 L Ed 2d 296 (1971).

[16] 388 US 130; 87 S Ct 1975; 18 L Ed 2d 1094 (1967), *reh den* 389 US 889; 88 S Ct 11; 19 L Ed 2d 197 (1967).

*Gertz* was cited for the proposition that the Supreme Court had declined to extend the protection afforded to the news media by the actual malice standard to defamation of newsworthy, private individuals. In *Gertz,* the Supreme Court concluded that plaintiff, an attorney seeking damages from a police officer for an allegedly unlawful killing of a young man, was not a public figure and, thus, defendant could not utilize the *New York Times v Sullivan* constitutional privilege.

The trial court in the instant case decided that whether or not plaintiffs were public figures was a question of law for the court. Believing that the evidence was sketchy, the trial judge looked to *Schultz v Readers Digest Ass'n,*[17] where the court held plaintiff was not a public figure, even though the quantum of evidence was much greater than in this case. He seemed to conclude that plaintiffs are not general public figures under the proofs in this case.

But, in this connection, a second question remained, namely, whether plaintiffs are limited public figures in respect to the particular public controversy, if any, that gives rise to the alleged defamation. The trial judge believed that the by-law reform movement, which began with efforts of union dissidents to amend union bylaws to require financial reports of union officials and to elect business agents, stewards, and committee members in lieu of appointment, was a matter in substantial controversy and that the dispute had escalated and had substantial ramifications not only for members but also nonparticipants. The trial judge also believed that plaintiffs had injected themselves into the controversy in a substantial way.

After extended discussion of the "evidence",

[17] 468 F Supp 551 (1979).

(which apparently was only the depositions and affidavits of Girard, Lins, and others) the trial court said that "[t]hus, even if the statements are false as plaintiffs suggest, it cannot be said based upon the record presented that Girard had the requisite subjective awareness of falsity on which to raise an inference of reckless disregard for the truth".

From our view, we are satisfied that the question of whether defendants possess a constitutional qualified privilege was one of law for the court. The record supports the conclusions that there was a real dispute internally within the Teamsters Union regarding the efforts of dissident members to amend the bylaws of a large local union and that this was an existing controversy of wide public concern. Plaintiffs, as officers of the union, had thrust themselves to the forefront of the controversy.

Thus, we are satisfied that plaintiffs were special or limited public figures for purposes of this particular controversy. This means that, under the federal decisions, plaintiffs, as limited public figures, are prohibited from collecting damages from defendants for libel unless plaintiffs can show by clear and convincing proof that defendants made the complained of publication with actual malice.

Actual malice means publication with knowledge of falsity or with reckless disregard of truth or falsity. The burden of establishing actual malice was on plaintiffs. We do not resolve doubts in plaintiffs' favor. These propositions, which are based on recent federal decisions, support fully the trial court's conclusions. The burden of proof was upon plaintiffs to show by offering of specific evidence the falsity or reckless disregard of the truth or falsity of the column.

Review of the record does not indicate that Girard knew that the statements he made in the column were false, if, in fact, they were false. In the absence of such evidence, the burden was on plaintiffs to show a subjective awareness on the part of Girard of the falsity of his statements. There is not any evidence in the record that Girard had a subjective awareness of the falsity of the statements in his column, if indeed they were false.

A different issue is, however, whether or not he had a reckless disregard for the truth of his statements. Plaintiffs argue that the inadequacy, if not absence, of any impartial investigation on the part of Girard, the fact that he was totally lacking in objectivity or fairness, and was totally committed to one side in an intra-union dispute, all indicate malice.

Contrary to this position, the First Amendment protection with respect to actual malice is measured in terms of knowledge of falsity, rather than the traditional common-law tests of spite or ill will. The character and content of the article are not constitutionally permissible evidence of malice even where the publisher does not verify the contents of the publication.

In this case, there was evidence that Girard checked old news files in a perfunctory way. The cases do indicate that failure to undertake prior investigation does *not* constitute proof sufficient to present a jury question of reckless disregard for the truth. Failure to verify statements is not determinative of actual malice, even when biased sources are relied upon.

We conclude that the submitted evidence was not the clear and convincing proof necessary to establish a genuine issue of material fact concern-

ing the existence of actual malice. The four factual items previously referred to are well within the newspaper's qualified privilege. They are not actionable in this case because plaintiffs do not show they were made with actual malice.

While our conclusion regarding the federal constitutional qualified privilege of defendants is dispositive of the appeal, we also give consideration to the question of whether the qualified privilege of a newspaper to report on matters of public interest and concern under Michigan law is sifficient to support summary judgment.

Defendants argue that, where this qualified privilege exists, plaintiffs must affirmatively show that defendants published the column with actual malice. Formerly, the Michigan courts spoke of spite, ill will, or lack of good faith as being part of the standard to determine the presence of actual malice. However, since federal decisions like *New York Times v Sullivan, supra,* and its progeny, Michigan now follows what is referred to as the *New York Times* standard of actual malice, that is, publication with knowledge of falsity or in reckless disregard of whether it was false or not.[18]

Thus, with respect to the Michigan common-law qualified privilege, plaintiffs are faced with the same standard as with respect to the federal constitutional qualified privilege, namely, the necessity to prove actual malice, if plaintiffs are to overcome the Michigan qualified privilege rule. The trial judge concluded that recent Michigan decisions[19] indicate that the actual malice standard

---

[18] *Gaynes v Allen,* 128 Mich App 42; 339 NW2d 678 (1983).

[19] See, *inter alia, Postill v Booth Newspapers, Inc,* 118 Mich App 608, 619; 325 NW2d 511 (1982); *Johnson v Herald Co,* 116 Mich App 523, 525; 323 NW2d 468 (1982); *Zachrich v Booth Newspapers,* 119 Mich App 72, 74; 325 NW2d 630 (1982).

now followed in Michigan is that of *New York Times, supra.* We agree.

For example, in *Tumbarella v Kroger Co,*[20] this Court said there is a qualified privilege to publish what would otherwise be actionable defamation where the party communicating has an interest in which he has a duty to a person having a corresponding interest or duty. The question of whether or not a privilege attaches under disputed circumstances is one of law for the judge.

In *Tumbarella* we also said that, "where a qualified privilege exists, plaintiff must prove actual malice in order to recover: that is, must prove that the communication was made with knowledge of its falsity or with reckless disregard for the truth", which latter is, of course, vintage *New York Times v Sullivan.*

In this case, defendant possessed the qualified privilege enjoyed by newspapers to report matters of public interest. In determining whether the privilege exists and the extent of it, the trial judge does not consider the malice charged by the plaintiffs.[21] The qualified privilege may be lost by its abuse, but the burden is on the plaintiffs to prove the actual malice of the defendants.

As previously indicated, actual malice is established by proof that the defamatory statement is made with knowledge that it was false or with reckless disregard of whether it was false or not. It is not enough to merely allege that actual malice exists. The facts upon which plaintiff bases his conclusion of actual malice must be examined.[22]

Plaintiffs claim that defendants' libelous state-

[20] 85 Mich App 482, 493; 271 NW2d 284 (1978), *lv den* 406 Mich 939 (1979).

[21] *Lawrence v Fox,* 357 Mich 134; 97 NW2d 719 (1959).

[22] *Peisner v Detroit Free Press, supra.*

ments are untrue and were made with actual malice. Defendants, as would be expected, claim the statements are true. For purposes of defendants' motion for summary judgment, we assume defendants' allegedly libelous statements are untrue and inaccurate.

But, since defendants possess a qualified privilege under Michigan law that is quite separate and apart from defendants' constitutional defenses under federal law, plaintiffs must allege in their complaint or offer to prove facts supporting the conclusion that defendants either had knowledge of the falsity of the statements in the newspaper article or published with reckless disregard of the truth of the newspaper article. The trial judge held that plaintiffs failed to meet that standard. He said that review of the proofs did not disclose evidence that defendants acted with actual malice. While the question is a close one, we are inclined to agree.

In his deposition, defendant Girard details the steps he took to support what appears to have been conclusions that he held before starting the assignment. We are not here speculating whether there is any truth to Girard's claims. Rather, for purposes of summary judgment, we are looking to whether Girard and his newspaper lost their common-law qualified privilege because Girard knew his statements were false or whether he wrote and published with reckless disregard of the truth. Plaintiffs do not deny defendant's deposition regarding what he did. Neither is the intemperate tone and the unprofessional choice of terminology of the article relevant to the test imposed on Girard.

In *Steadman v Lapensohn*,[23] the Supreme Court

[23] 408 Mich 50; 288 NW2d 580 (1980), reh den 408 Mich 1109 (1980).

reversed a grant of summary judgment for defendant. Plaintiff was a candidate for circuit judge and defendant was a Traverse City newspaper. After depositions, the trial court granted summary judgment in a written opinion, which said there were not any material issues of fact, or, more particularly, said that, if any fact questions existed, they were immaterial and inconsequential, asserting that plaintiff had failed to indicate that there was existing proof of malice. The Supreme Court said that the trial court made assessments of fact contrary to the usual posture of summary judgment. The Supreme Court defined actual malice as "with knowledge of falsity or a reckless disregard of truth"[24] and cited *New York Times v Sullivan, supra.* Last, the Supreme Court said that actual malice necessary to defeat the conditional qualified privilege, which, of course, existed here, can be established by inference and, if there are genuine issues of material fact, the case is not for summary judgment.

We are satisfied that the *Steadman* decision does not control the result here for the reason that in *Steadman* there were substantial issues of material fact, such as conflicting claims regarding the plaintiff's financial problems, the number of lawsuits pending against him and plaintiff's claim that defendant reported falsely what plaintiff said in an interview. By issue of material fact, we do not mean the difference between a newspaperman claiming that he did not act with malice and an injured plaintiff claiming that he did act with malice. Rather, we have reference to the kind of outside provable facts referred to in *Steadman* that may be in dispute and from which an inference of actual malice may arise.

[24] *Id.,* p 54.

In the within case, we do not disagree with the trial judge's conclusion that there are not any issues of material fact that bear on the issue of actual malice. Plaintiffs are unable to present a single controverted fact which would tend to establish malice. There is no indication that defendants manipulated plaintiffs or distorted their statements. Consequently, we conclude that plaintiffs have not asserted actionable libel under the Michigan common-law qualified-privilege doctrine. For these reasons, we affirm the trial court's award of summary judgment.

Affirmed.