SPREEN v SMITH

Docket No. 85545. Submitted April 16, 1986, at Detroit. Decided July 7, 1986.

Plaintiff, Johannes Spreen, who was the sheriff of Oakland County, was accused by Robert Nyovich, an undersheriff, and Jacqueline Cey, plaintiff's personal secretary, of taking food which belonged to the county jail for his unauthorized personal use. Joel J. Smith and James McClear, reporters for The Detroit News, conducted tape-recorded interviews of Nyovich and Cey, who by that time had resigned and had been fired, respectively. Nyovich and Cey passed polygraph examinations which they took at Smith's request. Smith obtained from the Oakland County executive copies of invoices for specialty foods and groceries that were ordered on behalf of plaintiff and was also informed by the deputy county executive that the county auditor was investigating Nyovich and Cey's accusations. McClear interviewed the county auditor who informed him that he had warned Nyovich to tell plaintiff that plaintiff's use of food was not permitted. McClear further learned from the county civil counsel that use of jail food was only authorized when the sheriff actually resided at the jail. Smith and McClear thereafter wrote a series of articles based on the information they had received in which they reported that plaintiff was being charged with stealing food from the jail. A subsequent investigation by the Attorney General concluded that plaintiff was not entitled to receive food as compensation under Michigan law but that, in light of the long tradition that sheriffs living on county property were entitled to food, there was insufficient evidence to prove beyond a reasonable doubt that plaintiff knew that he was not entitled to it. Plaintiff then filed an action for defamation against defendants, Smith, McClear

REFERENCES

Am Jur 2d, Libel and Slander §§ 415 *et seq.*, 482 *et seq.*

Libel and slander: what constitutes actual malice, within federal constitutional rule requiring public officials and public figures to show actual malice. 20 ALR3d 988.

Libel and slander: who is a public official or otherwise within the federal constitutional rule requiring public officials to show actual malice. 19 ALR3d 1361.

and The Detroit News, Inc., in the Wayne Circuit Court. The trial court, Thomas Roumell, J., denied a motion for summary disposition by defendants, who argued that there was no genuine issue of material fact, that they had acted without malice, and that they were therefore entitled to judgment as a matter of law. Defendants appealed by leave granted. *Held:*

1. A publisher of defamatory falsehoods about a public official, such as plaintiff, or public figure is protected by the First Amendment unless the public official or public figure can prove that the statements were made with actual malice, i.e., with knowledge that the statements were false or with reckless disregard of whether they were false or not.

2. A plaintiff, to withstand a motion for summary disposition on the basis of the lack of genuine issue of material fact, must present evidence of facts from which a jury could reasonably infer actual malice on the part of the defendant. A mere allegation of actual malice, such as in this case, without more, is insufficient to raise a genuine issue of material fact.

3. In this case, plaintiff submitted no affidavits or other evidence in support of his allegations that there was evidence of actual malice, relying instead on the affidavits and other documentary evidence presented by defendants. The affidavits and documentary evidence indicated no issue of fact from which a jury could conclude that defendants published the allegedly false accusation against plaintiff with actual malice.

4. Defendants were entitled to, and the trial court should have granted, summary disposition.

Reversed.

1. LIBEL AND SLANDER — DEFAMATION — PUBLIC OFFICIALS — ACTUAL MALICE.

A publisher of defamatory falsehoods about a public official or public figure is protected by the First Amendment unless the public official or public figure can prove that the statements were made with actual malice.

2. LIBEL AND SLANDER — ACTUAL MALICE — PUBLIC OFFICIALS.

Actual malice in an action for defamation means that the defamer published a statement with knowledge that it was false or with reckless disregard of whether it was false or not; a plaintiff public official, in order to prevail in an action for defamation, must prove actual malice.

3. LIBEL AND SLANDER — DEFAMATION — MEDIA — ISSUE OF MATERIAL FACT — ACTUAL MALICE — SUMMARY JUDGMENT — COURT RULES.

A plaintiff public official in an action for defamation need only

present evidence of facts from which the jury could reasonably infer actual malice on the part of the defendant to raise a material issue of fact sufficient to defeat a motion for summary disposition on the basis that there is no genuine issue of material fact (MCR 2.116[C][10]).

4. Lɪʙᴇʟ ᴀɴᴅ Sʟᴀɴᴅᴇʀ — Aᴄᴛᴜᴀʟ Mᴀʟɪᴄᴇ — Rᴇᴄᴋʟᴇss Dɪsʀᴇɢᴀʀᴅ ꜰᴏʀ Tʀᴜᴛʜ.

Reckless disregard for whether a statement was false or not, sufficient to show actual malice in its publication, is not measured by whether a reasonably prudent man would have published or would have investigated before publishing, but by whether the publisher, in fact, entertained serious doubts concerning the truth of the statement published.

5. Lɪʙᴇʟ ᴀɴᴅ Sʟᴀɴᴅᴇʀ — Pʟᴇᴀᴅɪɴɢ — Aᴄᴛᴜᴀʟ Mᴀʟɪᴄᴇ — Sᴜᴍᴍᴀʀʏ Jᴜᴅɢᴍᴇɴᴛ.

A mere allegation that a defendant in a libel action knew that an allegedly libelous statement was untrue or that it was made with reckless disregard for the truth, without a pleading of the facts upon which the plaintiff bases his conclusion of actual malice, is insufficient to survive a motion for summary judgment.

*Robert W. Gagniuk & Associates* (by *Robert W. Gagniuk*), for plaintiff.

*Butzel, Long, Gust, Klein & Van Zile* (by *Richard E. Rassel* and *James E. Stewart*), for defendant.

Before: M. J. Kᴇʟʟʏ, P.J., and Sʜᴇᴘʜᴇʀᴅ and C. W. Sɪᴍᴏɴ,* JJ.

Sʜᴇᴘʜᴇʀᴅ, J. Defendants appeal by leave granted from a circuit court order denying their motion for summary disposition under MCR 2.116(C)(10) on plaintiff's defamation action. We reverse and remand for entry of summary disposition.

Plaintiff was the duly-elected sheriff of Oakland

---

* Circuit judge, sitting on the Court of Appeals by assignment.

County at the time of the alleged defamation. The Detroit News article of December 23, 1981, upon which the claim is primarily based, was written by defendants Joel Smith and James McClear, reporters for The Detroit News. That article, and several subsequent articles, stated that two of plaintiff's former aides had accused plaintiff of stealing food from the county jail and other improprieties. According to affidavits of both reporters, after the resignation of Robert Nyovich, former undersheriff, and Jacqueline Cey, plaintiff's former personal secretary, and plaintiff's November 23, 1981, press release asserting misbehavior by Nyovich and Cey, the reporters attempted to interview all persons involved in the matter. In mid-December, 1981, Nyovich and Cey agreed to be interviewed.

At the meeting, Nyovich produced a typed document that recited as follows regarding plaintiff's use of jail food:

> *UNAUTHORIZED TAKING OF FOOD*
> It is alleged that on numerous occasions Sheriff Spreen did take various cuts of meat and/or groceries procured from the County Central Stores Department and the kitchen in the Law Enforcement Complex for his private consumption.

Smith and McClear then conducted a tape-recorded interview. Both Nyovich and Cey clearly charged that plaintiff took jail food for personal use without authorization. Smith's affidavit details the investigation he made to verify the charges:

> a. I requested that Nyovich and Cey submit to a polygraph examination at Detroit News' expense which they did. That polygraph was conducted on December 22, 1981 by Marcy Consulting Services at which time I was informed of the positive results. A copy of the Marcy Consulting Services' report is Attachment 3 to my affidavit.

    b. I requested from the Oakland County Executive copies of invoices for specialty food or groceries that had been ordered by or on behalf of Johannes Spreen. I received invoices which are Attachment 4 to my affidavit.

    c. I was informed by Deputy County Executive Patrick Nowak that the Oakland County Auditor was investigating the charges by Nyovich and Cey that Johannes Spreen had been taking home specialty meats and groceries for his own use.

McClear's affidavit details the additional investigation he undertook:

    a. I interviewed Oakland County Auditor James M. Brennan who informed me that when he learned the prior February of Mr. Spreen's food orders at county expense, he had warned Undersheriff Robert Nyovich to tell Sheriff Spreen that this was not permitted.

    b. I interviewed Oakland County Civil Counsel Robert P. Allen who informed me that there had been some precedent of Oakland County Sheriffs obtaining food at county expense that was applicable only when the Sheriff actually lived at the jail. I knew that Mr. Spreen did not reside at the jail.

Both reporters' affidavits contain their affirmative statement that, based on all the information they had received, they believed plaintiff was being charged with stealing jail food and that the charges were true.

The December 23, 1981, article was based upon the earlier interview with Nyovich and Cey. The same day that the first article in the series appeared, the two former aides held a public news conference. Smith and McClear attended that news conference and based later articles on it. The later articles repeated the charge that plaintiff had stolen county food.

Plaintiff claimed in response to these charges that he was entitled to the food. The Attorney General later investigated the charges against plaintiff and concluded that plaintiff was not entitled to receive food as compensation under Michigan law but that, in light of the long tradition that sheriffs living on county property were entitled to food, there was insufficient evidence to prove beyond a reasonable doubt that plaintiff knew that he was not entitled to it.

Plaintiff filed suit on December 21, 1982. Defendants moved for summary disposition, arguing that their reporting of the charges was accurate and that there was no genuine issue of material fact concerning whether they acted without actual malice. The trial court denied the motion, reasoning that the affidavits and admissions did establish a question of fact on the issue of actual malice.

Defendants first argue on appeal that their motion for summary disposition should have been granted because their characterization of the charge against plaintiff was not materially false. We agree that the charge by Nyovich and Cey of unauthorized taking of food was in effect a charge of "stealing" the food, as characterized by defendants. However, that determination does not resolve whether there is a "neutral reportage privilege" where allegedly false charges are accurately reported. See *Postill v Booth Newspapers,* 118 Mich App 608, 621-622; 325 NW2d 511 (1982), lv den 417 Mich 1050 (1983). This Court in *Postill* declined to embrace the privilege, viewing as adequate the protections afforded the press by the burden of proof as set forth in *New York Times Co v Sullivan,* 376 US 254; 84 S Ct 710; 11 L Ed 2d 686 (1964). Neither party has briefed this issue, the trial court did not address it, and we do not deem it necessary to further address it given our

resolution of the primary issue raised by the parties and discussed below.

Defendants also argue that there is no issue of fact from which a jury could conclude that defendants published the allegedly false charge with actual malice. We agree.

The United States Supreme Court has held that a publisher of defamatory falsehoods about a public official or public figure is protected by the First Amendment unless the public official or public figure can prove that the statements were made with "actual malice." Actual malice is defined as knowledge that the statement is false or reckless disregard of whether it is false or not. *New York Times Co v Sullivan, supra; Curtis Publishing Co v Butts,* 388 US 130; 87 S Ct 1975; 18 L Ed 2d 1094 (1967). Plaintiff, a sheriff, clearly falls within the category of "public official." See *Postill, supra,* p 619. Thus, to prevail plaintiff must show that defendants published the food theft charge with knowledge that it was false or with reckless disregard of whether it was false or not.

We agree with the panel in *Dienes v Associated Newspapers, Inc,* 137 Mich App 272, 284-285; 358 NW2d 562 (1984), that to withstand a motion for summary disposition under MCR 2.116(C)(10) in a libel case, the plaintiff need only present evidence of facts from which a jury could reasonably infer actual malice on the part of the defendants. See also *Steadman v Lapensohn,* 408 Mich 50; 288 NW2d 580 (1980). Contra, *Lins v Evening News Ass'n,* 129 Mich App 419; 342 NW2d 573 (1983) (libel plaintiff must come forward with *clear and convincing proof* that a genuine issue of material fact exists with regard to malice).

In support of its motion for summary disposition, defendants submitted the affidavits discussed above in addition to other documentary evidence

in the form of transcripts of the interview and the written statement of Nyovich. Plaintiff submitted no affidavits or other evidence, relying instead on the evidence submitted by defendants to support his argument that there was evidence of actual malice. According to plaintiff, actual malice is demonstrated by the following facts: 1) the December 23, 1981, article was written and submitted for publication before the press conference on the same date, 2) Nyovich and Cey never actually said that plaintiff "stole" any food, and 3) McClear's assumption that plaintiff was not residing at the jail was not supported by any facts. The trial court agreed that these facts were evidence of malice. We do not.

The fact that the first article in the series was submittted for publication prior to the press conference is completely irrelevant since that article was based on a prior tape-recorded interview with the defendant reporters. The article does not even refer to the public press conference.

Second, while Nyovich and Cey never actually said that plaintiff "stole" any food, the defendants' characterization of their charge of "unauthorized taking of food" as theft was a reasonable interpretation of what Nyovich and Cey were claiming. Plaintiff himself so characterized the charge in later deposition testimony.

Finally, plaintiff does not dispute that he was not living at the jail. Rather he seems to object to the fact that McClear's affidavit does not state how McClear knew that plaintiff did not reside in the jail apartment provided for the sheriff. The thrust of this argument, as well as plaintiff's argument on appeal, is that defendants had obvious reasons to doubt the accuracy of their sources and should have investigated further. However, plaintiff is able to point to nothing in the record to support

the assertion that defendants published the statements "with a high degree of awareness of their falsity." *Postill, supra,* p 625. Failure to properly investigate and verify facts does not indicate actual malice. *Postill, supra,* p 626; *Dienes, supra,* p 285; *Kurz v Evening News Ass'n,* 144 Mich App 205, 213; 375 NW2d 391 (1985). "Reckless disregard is not measured by whether a reasonably prudent man would have published or would have investigated before publishing, but by whether the publisher, in fact, entertained serious doubts concerning the truth of the statement published." *Kurz, supra,* p 213.

A party opposing a motion for summary disposition under MCR 2.116(C)(10) must come forward with evidence establishing a genuine issue of material fact. *Dienes, supra,* p 280. Plaintiff here has come forward with no evidence to support a finding of malice on the part of defendants and can point to no evidence supporting such a finding in the affidavits and other documentary evidence submitted by defendants. A mere allegation of negligence is insufficient to raise a material issue of fact.

> While this Court has previously ruled that the mere allegation of malice is sufficient to state a cause of action for defamation, *Parks v Johnson,* 84 Mich App 162; 269 NW2d 514 (1978), *lv den* 405 Mich 820 (1979), *Brunn v Weiss,* 32 Mich App 428; 188 NW2d 904 (1971), Federal courts have held that a plaintiff seeking to recover for an alleged libel must make an affirmative showing of facts from which defendant's *probable knowledge* of falsity can be constitutionally sustained. See, *e.g., Cerrito v Time, Inc,* 302 F Supp 1071, 1075 (ND Cal, 1969), *aff'd* 449 F2d 306 (CA 9, 1971).
>
> In commenting on the use of the summary judgment mechanism in defamation actions, the court in *Cerrito, supra,* reasoned that

"Summary judgment is an integral part of the constitutional protection afforded defendants in actions such as this. Plaintiff has purposely been given the heavy burden of proving actual malice . . . . When it has been established . . . that he cannot meet it, the First Amendment makes it incumbent upon the Court to grant defendant's motion for summary judgment." 302 F Supp 1071, 1075-1076.

Therefore, the mere allegation of actual malice is not, without more, sufficient to raise a material issue of fact, particularly where, as here, defenses of a constitutional dimension are raised. [Emphasis in original. *Hayes v Booth Newspapers, Inc,* 97 Mich App 758, 774-775; 295 NW2d 858 (1980).]

Plaintiff has failed to come forward with any evidence or facts from which a jury could reasonably infer that defendant published the charge with actual malice even if the charge was false or based upon an incorrect interpretation of the facts by defendants or by the employees making the accusation.

The essential points we take into account are:

(A) The employees alleged certain uncontroverted facts (i.e., the sheriff took food).

(B) The employees claimed the sheriff had no right to take it.

(C) There was some evidence that this portion of the claim was correct or was at least a reasonable interpretation of the facts. This is so even if the sheriff honestly believed he had the right to take the food for his personal use.

(D) Defendants took numerous steps to verify the charges.

(E) Defendants asserted in the published articles that the employees were accusing the sheriff of theft. It is obvious even to the casual observer that this was the nature of the accusation made by the employees.

(F) Although we do not need to rule on the "neutral reportage privilege" in order to dispose of the case, it is nevertheless true that at no time did defendants themselves ever accuse the sheriff of theft.

Accordingly, summary disposition should have been granted.

We further note that appeal plaintiff has attempted to greatly expand his case by listing nine additional allegedly defamatory statements contained in the newspaper articles. The only allegedly defamatory statement pled and argued by plaintiff and considered by the trial court was the food theft charge. Plaintiff's supplemental answer to defendants' motion for summary disposition clearly states:

> It is the Plaintiff's position that on December 23, 1981, THE DETROIT NEWS, through their staff writers, JOEL SMITH and JAMES MCCLEAR, reported an event that was substantially false in that they accused the Oakland County Sheriff of stealing jail food.

Plaintiff's failure to plead and argue these additional claims below precludes our review on appeal. *Town & Country Dodge, Inc v Dep't of Treasury,* 118 Mich App 778, 789; 325 NW2d 577 (1982), aff'd 420 Mich 226 (1984).

Reversed.