NUYEN v. SLATER.

1. LIBEL AND SLANDER—DEFINITION OF DEFAMATORY COMMUNICATION.
   A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.

2. SAME—SUMMARY JUDGMENT—POOR TASTE.
   Summary judgment for defendant in action for libel because of letter she had sent to State health department relative to what defendant had expressed as a handling of a local situation by plaintiff employee "with such poor taste" held, proper, such communication not being defamatory.

Appeal from Kalamazoo; Fox (Raymond W.), J. Submitted February 5, 1964. (Calendar No. 40, Docket No. 50,417.) Decided April 6, 1964.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 33 Am Jur, Libel and Slander § 8 et seq.

Complaint by Faye Nuyen against Ellen Slater for libel. Summary judgment for defendant. Plaintiff appeals. Affirmed.

*Milo O. Bennett,* for plaintiff.

*Paulson, Bennett & Palmer* (*Thompson Bennett,* of counsel), for defendant.

KELLY, J. (*concurring*). Plaintiff is a registered nurse employed by the Kalamazoo county health department. May 6, 1963, she filed a complaint against defendant alleging that she had been defamed in a letter written by defendant to the State health department, in Lansing. The letter, attached to the complaint and made a part thereof, is as follows:

*"Dear Sir:*
"I don't quite know how to write this letter in such a way that you won't think it is a crank letter.

"First of all, let me tell you I'm not one of these people who are dissatisfied with our country and everything in it, just the opposite I'm very proud of it and quite satisfied with most things.

"I am secretary of our Mother's Club and a very active member of the P.T.A. Now that I have told you about myself maybe you will listen to me.

"I am very disgusted with the Kalamazoo branch of your health department. There is a lady there named Mrs. Nyon [*sic*] who had handled health department business very poorly. My neighbors— Mr. and Mrs. Robert Sanborn, adopted 2 Korean orphans within the last couple years. Everyone seems to have their own opinion whether it should be done or not! I am in favor of it and our President must have been or he would not have extended the bill like he did. This is why I cannot understand how Mrs. Nyon could treat these people like she has,

' "The last little girl my neighbors brought into this country had worms (from what I hear so do a lot of American children). My neighbor took her little girl to 1 of our best specialist and she has been treated and he still checks her. Mrs. Nyon took it upon herself to walk up to my neighbor in a department store (after recognizing these little Korean girls) and say to her—Mrs. Sanborn I have containers in my car and I want you to take them home and you and your whole family are to use them. She also told my neighbor that worms were like typhoid. My neighbor got very hurt and mad to be approached and embarrassed in a public place and she told Mrs. Nyon No! Mrs. Sanborn then went home and called Dr. Dugger and asked him if this was necessary? He said No! Mrs. Sanborn is willing for her little girl to be tested further, but this does not satisfy Mrs. Nyon she has called another 1 of the neighbors in this plot a couple of times and talked about the Sanborns and has come this time to the Sanborns house insisting they all have to use these containers. She has upset my neighbor so much that her mother (who is 63 years old) has come to stay with Mrs. Sanborn. When Mrs. Nyon came the other day and started giving orders Mrs. Sanborn's mother pushed Mrs. Nyon away from her door and Mrs. Nyon grabbed the door and slammed it in Mrs. Newland's face. Now our Kalamazoo health department is taking Mrs. Sanborn's mother to court for a trial.

"Another lady in the same department told Mrs. Sanborn she didn't know why people brought these children over here anyhow! I believe there is prejudice here and I do not believe that if my own child had a case of worms and my doctor was treating it that they would have handled it with such poor taste.

"We have a health and welfare clinic at our school, we've had cases where the health department needed to step in, but these people have a very capable specialist and I don't think they should be interferred with. Also I would like to say the Sanborns

are not only nice people, but probably the cleanest people the health department will ever meet.
"Thank you for listing to my complaint.
"Sincerely yours,<br>"(Signed)   MRS. WM. SLATER,<br>406 New Hampshire,<br>Kalamazoo, Michigan."

Defendant moved for a summary judgment* on the ground that plaintiff's complaint failed to state a claim upon which relief could be granted in favor of plaintiff. June 11, 1963, the trial court in granting this motion stated:

"There is no allegation in these pleadings that this wasn't the actual opinion of the critic.   *   *   * We are not talking here in this letter about the private conduct of the plaintiff. We are talking about her activities in connection with her employment, and I think it should be fundamental that the public have the right to criticize and call to the attention of public authorities the conduct of employees which, in the opinion of the complaining party, is not proper in connection with the official's duties.   *   *   *
"I do not believe that this complaint, in reading the exhibit attached to it, states a cause of action, and the motion for summary judgment is granted, provided, however, that the plaintiff may have—I am going to give her every opportunity—may have 15 days within which to amend the complaint to state a cause of action if she can and wishes to so amend. So, she can have 15 days in which to amend."

Plaintiff filed an amended complaint. The trial court on July 2, 1963, in granting defendant's motion for summary judgment, stated:

"This case is based, and must be based, solely upon the letter written by the defendant to the State health

_____

* See GCR 1963, 117.—REPORTER.

department. * * * Poor taste is what she is talking about, handled poorly, and what nice people the Sanborns, are.

"Now according to the complaint, after receipt of that, the State health department, to whom it was written, made its own findings and in their opinion 'Mrs. Faye Nuyen, registered nurse, was carrying out the usual functions of a public health nurse which, in this instance, was a request on the part of the family physician to check into the possible spread of an infectious ailment in the family. The uncooperativeness of the family with the nurse has resulted in unfortunate consequences.' Now, the family is the Sanborns, not Mrs. Slater who wrote this letter.

"I don't see for the life of me that the first amended complaint filed on June 17th states any cause of action any more than the original one filed on May 6, 1963. It is merely a letter from a citizen of the community expressing to the State health department that in her opinion the plaintiff used poor taste in the way she handled it. * * *

"So, for the same reasons as set forth previously, the motion is and summary judgment is granted."

Plaintiff contends that since she was accused of having want of capacity or fitness for engaging in the profession of nursing, that this is a case of libel *per se* and thus proof of special damages is not required in order to maintain the action; that no qualified privilege exists because the statements of defendant were neither true nor privileged and there was no public entitled to know the opinion of the defendant, and that privilege cannot exist in the presence of malice.

Defendant, in opposition to plaintiff's appeal, urges that the words of the letter are not defamatory, but, even if they were and even if they were false, they were protected by qualified privilege.

The determination of whether a qualified privilege exists is properly for the court to decide as a matter of law. See *Bostetter* v. *Kirsch Company,* 319 Mich 547; *Timmis* v. *Bennett,* 352 Mich 355; and *Lawrence* v. *Fox,* 357 Mich 134.

In the recent case of *Bufalino* v. *Maxon Brothers, Inc.,* 368 Mich 140, this Court cited with approval the following from 33 Am Jur, Libel & Slander, § 126, pp 124–126 (p 153):

" 'A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do. This general idea has been otherwise expressed as follows: A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits.' "

The letter written by defendant to the State health department in Lansing clearly falls within the scope

of a qualified privilege as enunciated in the above quotation. As a private citizen interested in the proper administration of the local county health department, defendant was qualifiedly privileged to express her concern regarding the alleged improper conduct of an employee of the county health department and the office charged with supervisory powers over plaintiff. Thus, the trial court was not in error in ruling that the principle of qualified privilege was applicable to defendant's alleged defamatory letter.

Where a qualified privilege exists there is a presumption of good faith. In *Konkle* v. *Haven,* 140 Mich 472, 478, the Court stated:

"The presumption in cases of privileged communications is that the person acts in good faith and from proper motives. If there is anything in the alleged libelous article or in the surrounding circumstances which shows a bad or vindictive spirit or a feeling of hatred or ill will, the question belongs to the jury. If there is not, it belongs to the court, as a question of law."

The same principle was commented upon in *Raymond* v. *Croll,* 233 Mich 268, 275, 276, wherein it was said:

"To overcome the presumption of good faith the circumstances must be such as to show that the defendant was actuated by a bad motive, which led him to take advantage of the occasion to injure the plaintiff. The court should not permit dishonesty of purpose to be lightly inferred from acts which are just as consistent with good faith as with bad faith. If the circumstances relied on as showing malice are as consistent with its nonexistence as with its existence, the plaintiff has not overcome the presumption of good faith, and there is nothing for the jury."

Appellant's complaint does not allege any facts relating to any extrinsic circumstances from which

the existence of actual malice is inferable.  The only allegation of actual malice is the conclusion without allegation of fact and a general allegation that the writing and its publications were done maliciously is insufficient.

Defendant's communication was not a general public distribution of criticism but was confined to the 1 letter sent to plaintiff's employer, the State health department, and no actual malice is shown by the letter itself.

We agree with appellee that: "In the present case, the letter and the factual circumstances alleged in the complaint are not only as consistent with the non-existence of actual malice as with its existence but they are inconsistent with any inference except that of good faith.  The complaint clearly shows that appellant has no evidence to present to show actual malice on the part of appellee, and a jury would have nothing upon which to base a finding of actual malice except pure speculation."

We affirm the judgment of summary judgment as entered in the court below.  Costs to appellee.

ADDENDUM:

We agree with Justice SOURIS' opinion that defendant's letter is not defamatory, and nothing in this opinion is to be construed as inferring said letter to be defamatory.

SMITH and O'HARA, JJ., concurred with KELLY, J.

SOURIS, J.  By affirming summary judgment for defendant on the ground that she was protected by a qualified privilege, Mr. Justice KELLY implies that defendant's letter is defamatory.  In the face of Judge Fox's apodictic finding that it was not libelous, Justice KELLY would have us assume that it is, without specifying in what manner it defames plaintiff.

I agree with the trial judge. Nothing contained in defendant's letter to the health department defamed plaintiff within the commonly accepted meaning of the word. See 3 Restatement, Torts § 559.* It was, indeed, sharply critical of plaintiff's performance of her duties as a public health nurse, but it was criticism, as Judge Fox noted, of plaintiff's bad taste, her poor judgment, in handling a matter of some delicacy to the parties directly involved and to their friendly neighbors. I find disturbing the suggestion implicit in what Justice Kelly has written that a citizen risks suit for defamation merely for expressing such sentiments. More to the point, I find no currently respectable authority (see *New York Times Company* v. *Sullivan*, 376 US 254 [84 S Ct 710, 11 L ed 2d 686], 32 Law Week 4184, decided by the United States supreme court March 9, 1964) in support of the suggestion.

The judgment should be affirmed, and costs taxed against plaintiff.

Kavanagh, C. J., and Dethmers, Black, and Adams, JJ., concurred with Souris, J.

---

* "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."