SWENSON-DAVIS v MARTEL

Docket No. 66658. Submitted January 5, 1984, at Lansing.—Decided
May 3, 1984. Leave to appeal denied, 419 Mich __.

Marcia Swenson-Davis, a teacher at an Ann Arbor high school,
brought an action against William Martel, M.D., for libel and
intentional infliction of emotional distress. The basis for the
action was Martel's accusation, in a letter to the school princi-
pal following a confrontation in a conference held pursuant to
the school district's "fair treatment policy" regarding a grade
received by Martel's son, that plaintiff had treated his son
"most unfairly" and had displayed "remarkable insensitivity
and behavior that was most unprofessional" and "inconsistent
with good teaching practice". The Ann Arbor School District
was allowed to intervene as a defendant. The Washtenaw
Circuit Court, Edward D. Deake, J., held that defendant Mar-
tel's statements were cloaked with a qualified privilege and
granted summary judgment to both defendants. Plaintiff ap-
pealed. *Held:*

1. Martel's statements were protected by a qualified privilege.
He had an interest and a right to see that his son was being
competently taught, and his letter reflected his concern with
his son's education.

2. Plaintiff failed to allege any facts which create a genuine
issue of material fact as to whether defendant Martel made the
allegedly defamatory statements with actual malice.

3. The trial court did not err in concluding, as a matter of
law, that Martel's use of the school district's complaint proce-
dure was not conduct so extreme as to constitute the inten-
tional infliction of emotional distress.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur 2d, Libel and Slander §§ 1-3, 8-11, 102 *et seq.*
[2, 3] 50 Am Jur 2d, Libel and Slander §§ 195-197, 484.
[3] 50 Am Jur 2d, Libel and Slander § 205.
   Actionability of statements imputing inefficiency or lack of qualifi-
   cation to public school teacher. 40 ALR3d 490.
[4, 5] 50 Am Jur 2d, Libel and Slander §§ 415, 416.
[6] 38 Am Jur 2d, Fright, Shock, and Mental Disturbance § 4.

M. J. KELLY, J., concurred. He would hold that defendant Martel's statements were an expression of plain everyday communication and that plaintiff's claims should have been peremptorily dismissed on First Amendment grounds as the statements were free expressions of opinion.

1. LIBEL AND SLANDER — DEFAMATORY STATEMENTS.

A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him; slander or libel per se exists when the words spoken or written are false and malicious and are injurious to a person in his or her profession or employment.

2. LIBEL AND SLANDER — QUALIFIED PRIVILEGE — QUESTION OF LAW.

Generally, a qualified privilege extends to all bona fide communications made upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty, and includes cases where the duty is not a legal one but is of a moral or social character; the initial determination of whether a privilege exists is one of law for the court.

3. LIBEL AND SLANDER — QUALIFIED PRIVILEGE — SCHOOL TEACHERS.

A citizen who complains to the appropriate official about the fitness of a public school teacher enjoys a qualified privilege.

4. LIBEL AND SLANDER — MALICE — PLEADING.

A general allegation of malice is insufficient to establish the showing of actual malice required to support a claim of libel.

5. LIBEL AND SLANDER — MALICE — KNOWLEDGE OF FALSITY.

Actual malice in a libel action is shown where the writing in question is made with knowledge that it is false or with a reckless disregard for whether it is false or not.

6. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

A claim of intentional infliction of emotional distress requires a showing of conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

*Law Office of Barry L. Howard* (by *Frank A. Guido),* for plaintiff.

*Harris, Lax, Gregg & Guenzel* (by *Jerold Lax*), for defendant Martel.

*Miller, Canfield, Paddock & Stone* (by *Gregory L. Curtner* and *Linda O. Goldberg*), for defendant Ann Arbor School District.

Before: BRONSON, P.J., and M. J. KELLY and R. S. HOFFIUS,* JJ.

PER CURIAM. Plaintiff appeals from the trial court's order of summary judgment in favor of defendants Martel and the Ann Arbor School District in plaintiff's action against Martel for libel and intentional infliction of emotional distress.

Plaintiff is a teacher at a high school in Ann Arbor and had defendant Martel's son, Jonathan, in her "Honors" English class in the spring semester of 1980. Plaintiff announced to the class that each student's final grade would be determined by a mathematical formula. Under that formula, Jonathan should have received a final grade of A−, but he was given a B+. Jonathan complained to plaintiff, but she claimed that, notwithstanding the formula, determination of a student's final grade was within her discretion.

Jonathan told his father about plaintiff's refusal to change his grade. Defendant Dr. Martel contacted the school principal. Pursuant to the first step of the school system's "fair treatment policy", a conference was held with plaintiff, Dr. and Mrs. Martel, Jonathan, and the principal. Plaintiff claims that the entire conference consisted of defendant's berating her. Following this conference, defendant, pursuant to the fair treatment policy grievance procedure, wrote a letter to the princi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

pal expressing his dissatisfaction with plaintiff's performance as a teacher and with her treatment of his son, Jonathan. In his letter, defendant Martel accused plaintiff of treating Jonathan "most unfairly" and of displaying "remarkable insensitivity and behavior that was most unprofessional" and "inconsistent with good teaching practice".

Plaintiff thereafter filed a lawsuit, alleging that the statements in defendant's letter were libelous and intended to inflict upon her emotional distress. The school district's motion to intervene as a party defendant was granted. Both defendants subsequently moved for summary judgment pursuant to GCR 1963, 117.2(1) and (3). After taking the motions under advisement, the trial court granted the defendants summary judgment in a thoughtful written opinion. We affirm.

The trial court held that defendant Martel's statements were cloaked with a qualified privilege and, to be actionable, plaintiff had to show that the statements were made with malice. The court reasoned that whether or not plaintiff had made a showing of malice sufficient to withstand summary judgment, Martel's statements, as a matter of law, were expressions of opinion protected by the First Amendment of the United States Constitution. Since we find that, under Michigan law, the pleadings fail to reveal a genuine issue of material fact as to whether defendant Martel made the statements with malice, we find it unnecessary to reach the constitutional issue.

A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Nuyen v Slater,* 372 Mich 654, 662, fn; 127 NW2d 369 (1964); *Ledsinger v Burmeister,* 114 Mich App

12, 21; 318 NW2d 558 (1982). Slander (libel) per se exists where the words spoken (written) are false and malicious and are injurious to a person in his or her profession or employment. *Croton v Gillis,* 104 Mich App 104, 108-109; 304 NW2d 820 (1981).[1]

The trial court found that defendant Martel's statements were protected from action by a qualified privilege. We agree. In general, a qualified privilege extends to all communications made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty, and embraces cases where the duty is not a legal one but is of a moral or social character of imperfect obligation. *Timmis v Bennett,* 352 Mich 355, 366; 89 NW2d 748 (1958). The initial determination of whether a privilege exists is one of law for the court. *Lawrence v Fox,* 357 Mich 134, 139-140; 97 NW2d 719 (1959).

The Michigan Supreme Court has held that a citizen who complains to the appropriate official about the fitness of a public school teacher enjoys a qualified privilege. *Wieman v Mabee,* 45 Mich 484, 486; 8 NW 71 (1881). Defendant Martel had both an interest and a right to see that his child was being competently taught.[2] His letter and the complained-of statements reflect defendant's legiti-

---

[1] *Nuyen v Slater, supra,* pp 661-662, and *O'Connor v Sill,* 60 Mich 175, 181-184; 27 NW 13 (1886), could be cited as support for the proposition that defendant's statements were not defamatory in the first place, for purposes of this opinion we will presume the statements, by impugning plaintiff's professionalism as a teacher, were defamatory, but we do not purport to take a position on this issue.

[2] The "Fair Treatment Policy" was adopted to provide due process rights to all persons involved in the Ann Arbor School District. Defendant Martel not only had a general right to express his concern about his child's education, but he had a corresponding right to process his grievance through the fair treatment procedure. That the alleged defamatory statements were made solely in the context of the established procedure only reinforces our conclusion that the statements were qualifiedly privileged.

mate concern with his child's education and fall within the scope of Michigan's qualified privilege.

Having decided that a qualified privilege protected defendant's statements, the next question to address is whether a material issue of fact existed as to whether defendant made the statement with actual malice. *Parks v Johnson,* 84 Mich App 162, 169; 269 NW2d 514 (1978), *lv den* 405 Mich 820 (1979). A general allegation of "malice" is insufficient to establish the required showing. *Zachrich v Booth Newspapers,* 119 Mich App 72, 75; 325 NW2d 630 (1982). Actual malice in a libel action is shown where the writing is made with knowledge that it is false or with a reckless disregard as to whether it is false or not. *New York Times Co v Sullivan,* 376 US 254; 84 S Ct 710; 11 L Ed 2d 686 (1964); *Peisner v Detroit Free Press, Inc,* 104 Mich App 59, 64; 304 NW2d 814 (1981).

In her complaint, plaintiff alleges that because defendant Martel knew or should have known that plaintiff was a competent teacher, he knew or should have known that his statements regarding plaintiff were false. We disagree. In the first place, defendant Martel's assertion that plaintiff acted unprofessionally and insensitively on particular occasions is not necessarily inconsistent with any alleged awareness on Martel's part of plaintiff's general reputation. Furthermore, defendant Martel's opinion that plaintiff displayed unprofessional and insensitive behavior was based wholly upon facts conceded by plaintiff to be accurate and true.[3]

---

[3] As the trial court noted, the Second Restatement of Torts takes the position that "[a] simple expression of opinion based on disclosed or assumed nondefamatory facts is not in itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is." Restatement Torts, 2d, § 566, comment (c). This position was adopted by the Sixth Circuit in *Orr v Argus Press Co,* 586 F2d 1108, 1114-1115 (CA 6, 1978), *cert den* 440 US 960; 99 S Ct 1502; 59 L Ed 2d 773 (1979).

A virtually identical case was presented to the Arizona court in *Sewell v Brookbank,* 119 Ariz 422; 581 P2d 267 (Ariz App, 1978). In that case, various parents submitted a list of grievances about a high school chemistry teacher to the school principal and pursued the grievances with the superintendent and the school board. In affirming the trial court's grant of summary judgment in favor of the parents on the ground that the plaintiff teacher had failed to present an issue of fact on the existence of actual malice, the court observed:

"The fact that Mr. Sewell denied the charges and the fact that the principal told appellees he thought Mr. Sewell was a good teacher does not mean that the appellees, by pursuing the matter, acted with knowledge of the falsity of their charges. They knew he denied the allegations, but because of the nature of the complaints, they did not know they were 'false' and his mere denial does not mean such allegations were false. Nor does the evidence show a reckless disregard of the truth, *i.e.,* a high degree of awareness of probable falsity. * * * If we were to hold otherwise then once the teacher denies any allegation of incompetency even though the adequacy of his answers are still in question, the matter is ended. We cannot condone such a result which would allow school officials to shield the incompetent teacher and thus defeat the legitimate interest of the parents in their children and the school system." 119 Ariz 426. (Citations omitted.)

Similarly, in the instant case, plaintiff has failed to allege any facts which create a genuine issue of material fact as to whether defendant Martel made the allegedly defamatory statements with actual malice.

The trial court also awarded summary judgment to defendants on plaintiff's claim for damages for the intentional infliction of emotional distress. We

agree with the trial court's conclusion that, as a matter of law, defendant Martel's use of the school district's complaint procedure cannot be regarded as conduct " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Warren v June's Mobile Home Village & Sales, Inc,* 66 Mich App 386, 391; 239 NW2d 380 (1976), citing 1 Restatement Torts, 2d, § 46, comment d, p 73.

The order of summary judgment for defendants is affirmed.

M. J. KELLY, J. *(concurring).* The entire gravamen of plaintiff's complaint is that defendant Martel accused plaintiff of treating his son "most unfairly" and of displaying "remarkable insensitivity and behavior that was most unprofessional". This is an expression of plain everyday ordinary communication between human beings of every ilk and stripe. It is patently ridiculous that courts should be required to countenance claims of libel and intentional infliction of emotional distress from everyday ordinary communication of the sort belabored in these proceedings.

If anything, I think the lower court erred in according plaintiff more attention than her claims justified. This case should have been peremptorily dismissed on First Amendment grounds as containing free expressions of opinion. Had defendant written a letter to the editor or had defendant intentionally disseminated the latter in the community, would the result be any different? We question the competence of our professionals daily in every conceivable form of communication and it is our absolute right to do so publicly in matters of opinion, let alone in the course of quasi-judicial

school district complaint procedures. This matter should have received the shortest shrift possible:

"However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v Robert Welch, Inc,* 418 US 323, 339-340; 94 S Ct 2997, 3007; 41 L Ed 2d 789, 805 (1974).