Raymond K. HOFFMAN, Appellant–Plaintiff Below,

v.

Elizabeth ROBERTO, Walter L. Wittenberg, Durwood Young, Lawrence Parrott, Kevin Cash, William A. Nolan, Michael L. Fayette, Nancy Loomis, Lonnie Wilson, Richard Nelson, James Curcio, Estate of Jackie Presser, and International Brotherhood of Teamsters, Warehousemen, Appellees–Defendants Below.

No. 71A03–9009–CV–399.

Court of Appeals of Indiana, Third District.

Sept. 23, 1991.

Rehearing Denied Dec. 4, 1991.

Robert J. Palmer, Jeffery A. Johnson, Tammy S. Sestak, May, Oberfell & Lorber, South Bend, for appellant-plaintiff below.

Robert J. Konopa, Kramer, Butler, Simeri, Konopa and Laderer, South Bend, Dennis R. Wilcox, Thomas M. Wilson, Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A., Cleveland, Ohio, Todd J. Kaiser, Locke, Reynolds, Boyd & Weisell, Barbara J. Baird, Edward J. Fillenwarth, Jr., Fillenwarth, Dennerline, Groth & Baird, Indianapolis, for appellees-defendants below.

HOFFMAN, Judge.

Plaintiff-appellant Raymond K. Hoffman appeals the dismissal of his fourth amended complaint as to the above-named defendants. Roberto, Wittenberg, Young, Parrott, Cash, Nolan, Fayette, Loomis, Wilson, Nelson and Curcio are members of the Unsecured Creditor's Committee (creditor's committee) in the bankruptcy proceedings for Tucker Freight Lines, Inc., pending in the Western District of Michigan, Southern Division. At the time of the incidents pertinent to this action, Hoffman was the president of Tucker. Hoffman brought suit against members of the creditor's committee, Jackie Presser, who was the chairman of the International Brotherhood of Teamsters (IBT), and IBT alleging that proceedings initiated by the creditor's committee in the bankruptcy of Tucker and certain communications through telex made by Presser which were circulated to union locals in the trucking industry constituted defamation. The claims against IBT are based upon the doctrine of respondeat superior stemming from the telexes sent by Presser.

In his fourth amended complaint, the subject of this appeal, Hoffman sued for defamation, malicious prosecution, abuse of process, and tortious interference with business relations. During the litigation of this case, Presser died. Presser's estate was substituted as a defendant.

In September 1983, Central Transport, Inc. purchased the ailing Tucker. Within days after the purchase, Tucker filed a voluntary petition under Chapter 11 of the Bankruptcy Act. On December 15, 1983, approximately three months after Tucker filed for bankruptcy protection, a telex was sent to members of the trucking industry. The telex advised that Tucker had recently been purchased by Central and that soon Tucker would be closing. The telex urged terminal managers and sales representatives to make contacts in order to transfer Tucker's customers to "CL Motor Freight." The telex bore the name, "R.A. Hoffman." Hoffman denied sending the telex; how-

ever, the creditor's committee fearing further depletion of Tucker's customers and goodwill immediately filed a request for a restraining order and a request for appointment of a trustee alleging *inter alia* that Hoffman was attempting to divert Tucker's customers and goodwill to Central.

Then in December 1983 and January 1984, two telex communications, authored by Presser in his capacity as chairman of the Teamsters National Freight Industry Negotiating Committee, advised union members of the action by the creditor's committee. The telexes were directed to local unions having members employed by Tucker. The first telex advised of the status of negotiations between Tucker and the union on contract concessions, and that the creditor's committee had filed an action for appointment of a trustee over Tucker, and had requested a restraining order to prevent Tucker from diverting customers and assets to another company. The December telex did not mention Hoffman. The second telex announced that the trustee had been appointed and purported to list factors which formed the basis of the decision. Twelve factors were listed. The telex mentioned Hoffman, stating that after a unilateral reduction in the wages of the union members, Hoffman received a salary increase.

Prior to appointment of a trustee in January 1984, all parties and the court became aware that Hoffman did not author the December 15, 1983 telex, and that the company referred to was not Central but another carrier with the initials "CL." In determining that a trustee should be appointed, the court based its decision on factors other than the telex. The court termed the telex's impact on the proceedings "negligible." Also, the temporary restraining order which had been issued earlier was allowed to expire without further action.

Alleging damage to his business and personal reputations, and limitations on his ability to obtain employment in the trucking industry caused by falsely imputing authorship of the December 15, 1983 telex to him, Hoffman filed his original complaint in December 1984. Hoffman's original complaint inaccurately described Presser as a member of the creditor's committee and did not mention the two telexes authored by Presser.

The cause was transferred to the United States District Court for the Western District of Michigan where it remained until 1988. The federal court then remanded the cause to the St. Joseph Circuit Court. The complaint was amended three times prior to remand to St. Joseph Circuit Court.

In 1988 the creditor's committee, Presser, and IBT filed motions to dismiss, prompting Hoffman to move to amend his complaint for the fourth time in June 1989. In July 1989 the creditor's committee moved to dismiss Counts I, II, and III of the fourth amended complaint. In September 1989, the trial court granted Hoffman's motion to amend the complaint, and granted the defendants' renewed motions to dismiss on Counts I, II, III, V and VI. The court reserved ruling on the motion to dismiss as to six members of the creditor's committee on Count IV. The trial court entered findings of fact and conclusions of law in December 1989. In May 1990, the trial court dismissed the remaining count as to the members of the creditor's committee after they filed a motion for summary judgment. The court ordered that the cause be dismissed and that Hoffman take nothing by reason of his complaint. This appeal ensued.

Hoffman raises three issues for review, which as restated are:

(1) whether the trial court erred in dismissing Hoffman's claims against Presser and IBT based upon a qualified privilege, and finding that the claims could not be maintained as a matter of law;

(2) whether the trial court erred in dismissing the claims against the creditor's committee based upon an absolute privilege, and finding that the claims could not be maintained as a matter of law; and

(3) whether the trial court erred in refusing to consider published deposi-

tions in granting judgment in favor of the creditor's committee.

Initially, it should be noted that the record does not reveal a determination whether Michigan or Indiana substantive law is applicable. On appeal Hoffman contends that the choice of law would not affect his claims. The creditor's committee contends that, although the trial court did not so state, the findings are based upon Michigan law and Michigan law should apply. Presser and IBT rely upon Indiana law and federal law in their briefs of appellee. While Indiana and Michigan law are similar regarding defamation, some differences exist.

In *Hubbard Mfg. Co., Inc. v. Greeson* (1987), Ind., 515 N.E.2d 1071, 1073–1074, our supreme court adopted a modified test for determining the choice of substantive law to be applied in a tort case. Prior to *Hubbard,* Indiana had followed the traditional doctrine of *lex loci delicti,* employing the substantive law of the place where the tort was committed. *See Tompkins v. Isbell* (1989), Ind.App., 543 N.E.2d 680, 681; *Bencor Corp. v. Harris* (1989), Ind.App., 534 N.E.2d 271, 272.

The court in *Hubbard* noted that often the place of the tort is significant and will be the place of the most contacts. *Hubbard, supra,* at 1073. However, when the place of the tort is insignificant, the court should evaluate other factors, according to their relative importance, such as:

"1) the place where the conduct causing the injury occurred;

2) the residence or place of business of the parties; and

3) the place where the relationship is centered."

*Id.* at 1073–74.

Under the foregoing test, the first inquiry is whether the place of the tort "bears little connection" to the particular action. *See id.* If the place of the tort is significant, the traditional doctrine of *lex loci delicti* will be employed.

In a defamation action, the place of the tort is generally considered the place of publication. *See* 53 C.J.S. § 5(b) Libel and Slander. Where the place of publication simultaneously occurs in more than one state, the place of the tort may become insignificant. *Cf. Id.* Here, the telexes were published simultaneously in several states, and the legal proceedings by the creditor's committee were initiated in Michigan. Under the *Hubbard* test, the place of the tort bears little connection to this particular action, requiring use of the three factors set out above.

The first factor, "the place where the conduct causing the injury occurred," leads to consideration of more than one state. The action by the creditor's committee occurred in Michigan where the bankruptcy proceedings were pending. The record discloses that the telexes originated from Presser's office in Washington, D.C. However, the place of origin of the telexes bears little significance to this action.

The second factor, "the residence or place of business of the parties," also embraces more than one state. Hoffman was a resident of Indiana. The record is conflicting as to the principal place of business of Tucker; however, Hoffman apparently worked at Tucker in Michigan. Further, as noted above, the bankruptcy proceedings concerning Tucker were pending in Michigan. The members of the creditor's committee maintained offices and residences in several states including Michigan, Indiana, Illinois and Missouri. Presser resided in Ohio and maintained offices in Washington, D.C.

The third factor, "the place where the relationship is centered," encompasses considerations outlined in the foregoing two factors. Hoffman's relationship to the defendants is based upon his employment with Tucker. Hoffman's employment with Tucker and the aspects of Tucker's business which concerned the defendants was based in Michigan largely due to the bankruptcy proceedings.

Based upon consideration of the three factors, the place of the most significant contacts appears to be Michigan. Michigan substantive law shall be applied and, as

noted by the creditor's committee, was employed by the trial court.

■ Also as an initial matter, Hoffman alleges that the trial court's entry of judgment must be considered a T.R. 12(B)(6) dismissal for failure to state a claim upon which relief may be granted, thereby foreclosing consideration of matters outside of the pleadings. Hoffman asserts that the inclusion of 12(B)(2) claims for lack of jurisdiction over the person within some defendants' motions to dismiss prevent conversion of the motions to dismiss to motions for summary judgment. In short, Hoffman contends that the trial court erred in considering any evidence within the record and was limited to a determination whether his complaint sufficiently stated a cause of action.[1] Hoffman argues that T.R. 12(B) allows only 12(B)(6) motions to be treated as motions for summary judgment.

Contrary to Hoffman's assertion, 12(B)(2) claims do not preclude conversion of a motion for dismissal to a summary judgment motion where evidence which is not excluded is considered by the court in its ruling.

> *See* Ind. Trial Rule 12(C) (If in any motion for judgment on the pleadings, which includes a 12(B)(2) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . .");
>
> *see also Tietloff v. Lift–A–Loft Corp.* (1982), Ind.App., 441 N.E.2d 986, 988 n. 3 (motion for judgment on pleadings for lack of personal jurisdiction was converted to summary judgment by operation of T.R. 12(C), when matters extraneous to the pleadings were considered).

Accordingly, the dismissals in the present case shall be treated as summary judgments inasmuch as matters extraneous to the pleadings were considered by the court.

Review of a summary judgment requires a determination whether a genuine issue of material fact exists and any doubt in this regard must be resolved in favor of the non-moving party. *Jackson v. Warrum* (1989), Ind.App., 535 N.E.2d 1207, 1210; *Lee v. Schroeder* (1988), Ind.App., 529 N.E.2d 349, 352. On review, the facts alleged by the opponent to the summary judgment must be taken as true. *Lee, supra,* 529 N.E.2d at 353. However summary judgment may be proper when conflicting facts and inferences exist as to some elements of a claim if there is no dispute as to facts which are dispositive of the matter. *Id.* at 352. If the party moving for summary judgment establishes a lack of genuine issues of material fact, the opposing party must present specific facts demonstrating a genuine issue for trial. *Elkhart Community School Corp. v. Mills* (1989), Ind.App., 546 N.E.2d 854, 855. A genuine issue exists if the trial court would be required to resolve disputed facts decisive to the action or to a relevant secondary issue. *Taylor–Chalmers, Inc. v. Bd. of Com'rs* (1985), Ind.App., 474 N.E.2d 531, 532.

Turning to the issues on appeal, Hoffman first contends that the trial court erred in dismissing the claims against Presser and IBT. Relative to the claims against Presser and IBT, the trial court entered the following findings:

"3. The December 23, 1983 Titan Electronic Mail sent under the name of Jackie Presser contained no factual inaccuracies and therefore was not defamatory under any standard.

4. The January 17, 1984 Titan Electronic Mail contains no factual inaccuracies relative to plaintiff Raymond K. Hoffman and therefore is not defamatory under any standard with respect to plaintiff Raymond K. Hoffman.

5. The January 17, 1984 Titan Electronic Mail was sent under the name of Jackie Presser, as Chairman of the Teamsters National Freight Industry Negotiating Committee, to various IBT local unions, and as such, a privilege was in existence in regard to said Titan message, as the

---

**1.** It is noteworthy that this case has been pending for more than six years and has generated an eleven volume record. Clearly, the cause has proceeded beyond the stage of a simple determination whether the complaint states a cause of action.

communication was between the Chairman of the Teamsters National Freight Negotiating Committee and IBT local unions which had members employed by Tucker Freight Lines, Inc.

6. The January 17, 1984 Titan Electronic Mail was merely the communication of an opinion; was not factual in nature, and does not even claim to be a fact. The January 17, 1984 Titan Electronic Mail was merely a privileged communication of an opinion.

7. As a matter of law, there cannot be any liability on the part of Jackie Presser, as an individual, based on either defamation (Count V) or tortious interference with prospective contractual relations (Count VI), based on the January 17, 1984 Titan Electronic Mail.

8. As a matter of law, there cannot be any liability on the part of IBT based on either defamation (Count V) or tortious interference with prospective contractual relations (Count VI), based on the January 17, 1984 Titan Electronic Mail."

The court then granted the motions to dismiss by Presser and IBT as to the entire fourth amended complaint.

It was uncontroverted by Hoffman at the hearing on the motions to dismiss that the contents of the December 23, 1983 telex were true and did not mention Hoffman. Therefore, this Court need only address the findings as to the January 17, 1984 telex.

Further at the time of the hearing on the motions, Hoffman had narrowed the offending portions of the January 17, 1984 telex to three paragraphs. The telex purported to convey information about the bankruptcy court's decision to appoint a trustee. In pertinent part, the telex stated:

"3. Accounts handled by Tucker were diverted to Central;

*   *   *   *   *   *

10. The company closed down the operations but retained nonunion management personnel with no work to perform;

*   *   *   *   *   *

We appreciate the assistance provided to our lawyers in securing this legal victo-ry. However, we still need to collect from you and your members any information concerning Tucker customers that have been diverted to Central Transport. This information will be needed by the Trustee in order to recover that work to the point where our members can be recalled. As soon as the Trustee is appointed, we will attempt to assist him in restoring the operation. We will keep you advised of developments."

The message was sent to "All local unions having members employed by Tucker Freight Lines." The only statement as to Hoffman, contained in paragraph No. 5 of the telex, alleged that Hoffman received a salary increase while union members' wages were reduced. Hoffman admitted the statement was true, and as noted above, the statement is not included as a defamatory one by Hoffman. Accordingly, the allegedly defamatory statements do not specifically mention Hoffman. The two counts in the fourth amended complaint which relate to Presser and IBT, allege defamation and tortious interference with prospective business relations.

The elements of defamation under Michigan law are:

"(a) a false and defamatory statement concerning plaintiff; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod). [Citations omitted.]" *Hall v. Citizens Ins. Co. of America* (1985), 141 Mich. App. 676, 368 N.W.2d 250, 255; *see also Ledl v. Quik Pik Food Stores, Inc.* (1984), 133 Mich.App. 583, 349 N.W.2d 529, 532.

Based upon the elements set out above, the trial court determined that Hoffman failed to demonstrate that the statements concerned him or that the statements were unprivileged. Further, the court found that the telex conveyed a privileged communication of an opinion.

■ In *Lins v. Evening News Ass'n* (1983), 129 Mich.App. 419, 342 N.W.2d 573, the court considered whether the nature of certain statements, which did not specify the plaintiffs, would support a defamation action by individuals. The court reiterated the general rule:

"Where a defamatory publication affects a class of persons without any special personal application, no individual of that class can maintain an action for the publication; and it has been held that, where defamatory statements are made against an aggregate body of persons, an individual member not specifically imputed or designated cannot maintain an action. [Citations omitted.]"

*Lins, supra,* 342 N.W.2d at 577.

The court also noted an exception to the general rule:

"However, a class may be defamed, so as to authorize any member of the class to sue, where the defamatory matter is applicable to every member of the class, particularly where the statement is directed toward a comparatively small group of persons or a restricted portion of a general class; and if the charge is against a class, and is, or may be, made of definite application, any one of that class may maintain an action on showing that the words applied especially to him. [Citation omitted.]"

*Id.* at 578.

In *Lins*, the court agreed that local union officials, who were few in number and whose identities were readily ascertainable, could maintain an action for defamation even though the allegedly objectionable portions of a newspaper article referred to the group. *Id.*

Implicitly, Hoffman contends that the behavior described in the offensive portions of the telex could easily be imputed to him, inasmuch as he was the president of Tucker at the time and because his name was mentioned in the telex. Similar to the plaintiffs in *Lins*, it does not require a leap in logic to assume that the president of Tucker is at least partially responsible for

management decisions including the possible dissipation of assets during the pending bankruptcy. Under Michigan law, Hoffman belonged to a readily ascertainable management group to which the statements applied.

However, also as in *Lins*, the inquiry does not conclude there. Here, the trial court found that the statements were privileged and were expressions of opinion.

In *Nuyen v. Slater* (1964), 372 Mich. 654, 127 N.W.2d 369, the Michigan Supreme Court defined a qualified privilege. The court stated:

"A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do. This general idea has been otherwise expressed as follows: A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation.... The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits. [Citations omitted.]"

*Id.* 127 N.W.2d at 372–73. *See also Swenson–Davis v. Martel* (1984), 135 Mich.App. 632, 354 N.W.2d 288, 290; *Tumbarella v. Kroger Co.* (1978), 85 Mich.App. 482, 271 N.W.2d 284, 289.

Whether a privilege exists is a determination of law for the court. *Swenson–Davis, supra,* 354 N.W.2d at 290–91.

■ In the present case Presser, as chairman of the Teamsters National Freight Industry Negotiating Committee, which was negotiating a labor dispute with Tucker stemming from Tucker's financial ills, made communications to unions to which he owed a duty on a subject which both he and the union locals possessed an interest. Whether Tucker was diverting assets and customers to another carrier, and whether union members' jobs had been forsaken in favor of nonunion employees were issues of vital importance to Presser, union officials and members whose jobs were at stake. It is important to note that the telex was sent by Presser to union locals with members employed by Tucker. Consequently, the communicator had an interest and a duty and the recipients of the telex had a corresponding interest in the matters. The qualified privilege attached in the present case.

■ Once it is established that the qualified privilege was in place, it must be determined whether a genuine issue of material fact exists as to whether the statements were made with actual malice. *Id.* 354 N.W.2d at 291. A general allegation that malice existed is insufficient for a plaintiff to establish the required showing. *Id.;* *Tumbarella, supra,* 271 N.W.2d at 289.

"Actual malice in a libel action is shown where the writing is made with knowledge that it is false or with a reckless disregard as to whether it is false or not." *Swenson–Davis, supra,* 354 N.W.2d at 291.

Here, Hoffman's complaint alleged that the statements were made with malice. As noted, such an allegation is insufficient to make the required showing. Review of the record failed to reveal and Hoffman fails to direct this Court to any facts regarding actual malice. The failure to present a genuine issue of material fact as to actual malice is fatal to Hoffman's claim of defamation against Presser and IBT. The trial court properly determined that judgment should be granted in favor of Presser and IBT on the issue.

It is unnecessary to determine whether the statements were in fact defamatory or were mere statements of opinion as recognized under Michigan law. The finding of a qualified privilege absent a showing of actual malice is determinative of the issue.

■ Hoffman's complaint also alleged tortious interference with prospective business relationships. Hoffman contends that the telex sent by Presser interfered with his ability to secure employment in the trucking industry.

Michigan recognizes tortious interference with the prospect of obtaining employment as a cause of action. *Schipani v. Ford Motor Co.* (1981), 102 Mich.App. 606, 302 N.W.2d 307, 314. The court in *Schipani* outlined the elements as follows:

"One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation. [Citations omitted.]"

*Id.*

Further, the court explained that the expectation must be a reasonable one. *Id.* Important to such a claim "is whether the plaintiff alleges interference with specific third parties or an identifiable prospective class of third persons." *Id.* The court stated:

"The tort of intentional interference with business requires, as a basis, that a business relationship be proved with some degree of specificity, at least to the point that future profit be a realistic expectation and not merely wishful thinking. It is true that where a prospective advantage is alleged, the plaintiff need not demonstrate a guaranteed relationship because 'anything that is prospective in nature is necessarily uncertain. We are not here dealing with certainties, but with reasonable likelihood or probability. This must be something more than a

mere hope or the innate optimism of the salesman.'

\* \* \* \* \* \*

... the tort comtemplates a relationship, prospective or existing, of some substance, some particularity, before an inference can arise as to its value to the plaintiff and the defendant's responsibility for its loss. [Citations omitted.]"

*Id.*

In *Feldman v. Green* (1984), 138 Mich. App. 360, 360 N.W.2d 881, 891 the court further refined the requisite showing:

"We hold that one who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another."

*Id.*

On appeal Hoffman relies on the allegations in his complaint asserting an expectancy of continuing employment in the management or operations of businesses in the trucking industry. Hoffman contends that Presser knew or should have known of such expectancy and that Presser acted with reckless disregard for the truth. Hoffman concludes "that Presser's actions were at least unethical, and may be fraudulent and illegal as well." Such nebulous allegations do not meet the standards set out in *Schipani* and *Feldman.* The trial court properly determined that as a matter of law, the claim against Presser and IBT for tortious interference with prospective contractual relations cannot be maintained. Other arguments presented by Presser and IBT on appeal need not be addressed.

In Hoffman's second allegation of error, he contends that the trial court improperly granted judgment for the creditor's committee based upon an absolute privilege and a finding that the claims could not be maintained as a matter of law. Relative to the claims against the creditor's committee, based upon the September 1989 hearing, the trial court entered the following findings:

"1. The conduct of the Unsecured Creditor's Committee, in filing the lawsuit was privileged, as the communication by them was a court pleading; statements in pleadings are absolutely privileged; and, this covers all allegations in Counts I, II and III of the Complaint against any members of the Unsecured Creditor's Committee.
2. To the extent, if any, that the conduct of the members of the Unsecured Creditor's Committee is not absolutely privileged, plaintiffs' [sic] Complaint in Counts I, II and III does not state a claim for which relief can be granted against any of such members."

The entire complaint was dismissed as to the creditor's committee with the exception of Count IV, interference with business relationships. On May 16, 1990 pursuant to a summary judgment motion, the court entered judgment for the members of the creditor's committee as to Count IV and incorporated the previous dismissal of all other counts as to the members of the creditor's committee.

Counts I, II, III and IV related to the creditor's committee and alleged defamation, malicious prosecution, abuse of process, and tortious interference with prospective business relations. The malicious prosecution claim and the abuse of process claim were not so specifically designated, but can fairly be read as such.

On the defamation claim, Hoffman acknowledges that the committee's allegations in the civil action to appoint the trustee, and for a restraining order were absolutely privileged because they were published in court pleadings. An absolute privilege bars an action for defamation even when the information was false, and was maliciously and knowingly published. *Grostick v. Ellsworth* (1987), 158 Mich. App. 18, 404 N.W.2d 685, 686. Absolute privilege cases are divided into three classes: 1) proceedings of legislative bodies; 2) judicial proceedings; and 3) communications by military and naval officers. *Id.* The privilege is confined to cases in which the public service or the administration of justice requires complete immunity

from liability for the language used. *Id.* 404 N.W.2d at 687. Thus, the privilege applies to matters of public concern, such as language used in legislative, judicial, and executive proceedings. *Id.* The goal is not so much for the protection of those engaged in the communication, as it is for the promotion of the public welfare. *Id.*

■ Hoffman complains that the committee did not confine its publication of the matters for which it sought appointment of a trustee to the judicial proceedings. Hoffman contends that the matters were published to third parties, including but not limited to union locals, before the proceedings to appoint a trustee were initiated. Consequently, Hoffman contends that the absolute privilege would not apply to the extra-judicial statements. Again, Hoffman relies on his complaint as sufficiently stating a cause of action, but does not disclose any genuine issue of material fact.

Review of the record does not disclose with any certainty the identities of the parties by whom or to whom the allegedly defamatory statements were made, or when any possible publication of the statements occurred. Moreover, this Court need not search the record to support an appellant's claims of error. *Nehi Beverage Co., Inc. v. Petri* (1989), Ind.App., 537 N.E.2d 78, 81. Accordingly, no error is presented for review.

■ On appeal, Hoffman acknowledges that the allegations within his complaint may not be sufficient to support a claim of malicious prosecution under Michigan law. He urges, however, that his allegation that he was unable to secure employment as a result of the committee's actions constitutes special damages as required by Michigan law.

■ Under Michigan law the elements of a tort action for malicious prosecution of a civil proceeding include: 1) termination of the proceeding in favor of the plaintiff; 2) absence of probable cause for the proceeding; 3) malice, a purpose other than that of securing the proper adjudication of the claim; and 4) a special injury directly resulting from the prior proceedings. *Young*

*v. Motor City Apartments Ltd.* (1984), 133 Mich.App. 671, 350 N.W.2d 790, 792. "Interference with one's usual business and trade, including the loss of goodwill, profits, business opportunities and the loss of reputation, is not cognizable as special injuries." *Id.* 350 N.W.2d at 793. Hoffman's claims do not sufficiently aver special injury as required by Michigan law. The trial court properly found that the claim for malicious prosecution could not be sustained as a matter of law.

■ Next, Hoffman complains that the trial court erred in granting judgment for the committee on his claim of abuse of process. In *Rowbotham v. Detroit Auto. Inter–Ins. Exchange* (1976), 69 Mich.App. 142, 244 N.W.2d 389, the court stated the essential elements for an action for abuse of process:

> "the existence of an ulterior purpose and an act in the use of the process not proper in the regular conduct of prosecution of the proceedings. The action lies for the improper use of the process after it had been issued, not for maliciously causing it to issue. (Citation omitted). To restate the proposition, the tort concerns the willful use of a valid process to obtain a result the law did not intend. [Citation omitted.]"

*Id.* 244 N.W.2d at 391.

Here, Hoffman alleges that the committee knew or should have known that Hoffman did not author the telex directing the diversion of customers to another company, and that the committee used the bankruptcy court to accomplish a purpose for which it was not designed. Hoffman fails to assert how the use of the process was improper after it had been issued. His grounds merely hint of malicious intent for causing it to issue which is insufficient based on the elements of the claim.

Moreover, uncontradicted evidence in the record discloses valid bases considered by the committee prior to initiating the proceedings. Tucker registered losses of over $700,000.00 per week after the bankruptcy petition was filed. The creditor's committee was interested in salvaging the company and its assets, and time was of the

essence. Hoffman presents no facts to the contrary. The court properly granted judgment in favor of the creditor's committee on the claim of abuse of process.

 Hoffman contends that the trial court erred in granting summary judgment in favor of the creditor's committee on his complaint for tortious interference with prospective business relationships. Hoffman contends that the trial court also erred in not considering portions of two depositions, in which Hoffman was the deponent, after the depositions were ordered published. Hoffman implies that evidence supporting the claim could be found in the depositions, and that the portions of his depositions relied upon by the committee in obtaining the judgment were taken out of context.

Without citation to the record, Hoffman contends that the transcript of the proceedings demonstrates that the trial court did not review the depositions as he requested prior to its ruling. As noted earlier, this Court is not required to sift through a record to garner information to support the appellant's position. *Nehi, supra.* Also, Hoffman acknowledges that the depositions are not included in the record. Moreover, Hoffman does not specify the facts within the depositions which support his position. The trial court properly granted summary judgment for the creditor's committee on the issue of tortious interference with prospective business relations.

Finally, Hoffman contends that various rulings by the Michigan District Court should be considered in this appeal. Hoffman concedes that the law of the case doctrine is inapplicable. However, Hoffman's request is based upon his urging that the issues in this Court are limited to a determination whether Hoffman stated claims upon which relief can be granted. Whatever relevance the district court's rulings have on T.R. 12(B)(6) dismissals, the conversion of the rulings below to summary judgments renders Hoffman's contention moot.[2]

There being no finding of reversible error, the trial court's judgment is affirmed.

Affirmed.

GARRARD and CONOVER, JJ., concur.

2. Also, it is noteworthy that although the district court in Michigan found that Hoffman's various amended complaints had stated claims upon which relief could be granted, the court questioned Hoffman's ability to maintain some of the claims on their merits.